No. 126,146

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BETH MERRILL,
*Appellant*.

SYLLABUS BY THE COURT

1.

Whether territorial jurisdiction exists is a question of law governed by the provisions of K.S.A. 21-5106.

2.

Venue is a question of fact that must be proved to establish jurisdiction.

3.

If one or more material elements of a crime occurs wholly or partly within this state, then Kansas has territorial jurisdiction to prosecute a criminal defendant.

4.

The territorial jurisdiction statute is to be interpreted broadly in determining whether a crime may be prosecuted in Kansas.

1

5.

Substantial compliance with the implied consent notice requirements set forth in K.S.A. 8-1001 et seq. is generally sufficient provided that the notice conveys the essentials of the statute and does not mislead the driver.

6.

K.S.A. 21-6811(c)(3) does not violate the Ex Post Facto Clause of the United States Constitution.

Appeal from Johnson District Court; MICHAEL P. JOYCE, judge. Oral argument held April 16, 2024. Opinion filed June 21, 2024. Affirmed.

*Jonathan Laurans*, of Kansas City, Missouri, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

BRUNS, J.: Beth Merrill appeals after being convicted in Johnson County District Court of two counts of felony aggravated battery while driving under the influence. On appeal, Merrill contends that the State of Kansas does not have territorial jurisdiction to prosecute this case. In addition, she contends that the district court erred in admitting certain evidence at trial relating to the issue of territorial jurisdiction. She also contends that the district court erred in admitting evidence of her refusal to take a breathalyzer test. Finally, Merrill contends that the district court's application of K.S.A. 2016 Supp. 21-6811(c)(3) in calculating her criminal history score violates the Ex Post Facto Clause of the United States Constitution. For the reasons set forth in this opinion, we affirm Merrill's convictions and sentence.

2

FACTS

On the morning of November 18, 2016, Merrill was driving in the southbound lanes of State Line Road when she struck two vehicles from behind that were stopped at a traffic signal at the intersection of 128th Street and State Line Road. An eyewitness reported that shortly before the collision, he observed Merrill leaving a neighborhood in Leawood, driving eastbound on 124th Street, and turning southbound on State Line Road. Eyewitnesses also reported that Merrill failed to slow down as she approached the vehicles stopped at a red light at the intersection.

One of the vehicles that Merrill hit was driven by Sandra Dillard, who was transporting her 83-year-old mother home from a doctor's appointment in Leawood. Dillard and her mother suffered significant injuries and both were hospitalized. Dillard's car was totaled in the crash. The second vehicle that Merrill struck was driven by Barbara Shull. Although her car was damaged, Shull was not injured.

Leawood Police Officer Cody Shields was the first to respond to the scene of the crash. He spoke to several eyewitnesses who told him that Merrill had been driving erratically for several blocks in the southbound lanes of State Line Road immediately prior to hitting the Dillard and Shull vehicles from behind. One of the eyewitnesses indicated that Merrill was having trouble remaining in her lane and at one point, she briefly veered into the northbound lanes before returning to the southbound lanes.

One of the eyewitnesses reported to Officer Shields that he could smell alcohol on Merrill's breath when he spoke to her after the crash and stated that she appeared to be intoxicated. In speaking with Merrill at the scene, Officer Shields also smelled the odor of alcohol on her breath, and she admitted to him that she had been drinking. The officer also noticed that Merrill seemed to be confused and slurred her words as she spoke.

According to Officer Shields, Merrill repeatedly asked about her dog but did not appear to realize the seriousness of what had happened nor did she express concern about those injured in the crash. Although the officer repeatedly asked for her driver's license, Merrill was unable to provide it and insisted that she had already given it to him. Officer Shields and another officer who had arrived at the scene also noticed that Merrill was having a difficult time maintaining her balance.

When asked by Officer Shields to perform field sobriety tests, Merrill was unable to complete them and had difficulty following simple commands. She also refused to submit to a preliminary breath test when asked to do so. Accordingly, Officer Shields arrested Merrill and transported her to the Leawood Police Department for further processing.

At the police station, Officer Shields gave Merrill a copy of the implied consent advisory form and also read it to her out loud. As he read the advisory to her, Merrill continued to talk about her dog. After he was finished reading, Officer Shields asked Merrill to submit to a breathalyzer test, but she refused. Merrill was then placed in a holding cell while Officer Shields began the process of applying for a search warrant in order to obtain a sample of Merrill's blood for testing.

After the search warrant was acquired, Officer Shields transported Merrill to Menorah Medical Center where a blood sample was obtained. The blood sample was submitted to the Kansas Bureau of Investigation (KBI) for testing in its laboratory. Subsequently, the KBI laboratory issued a report revealing that Merrill's blood alcohol level was .31 grams per 100 milliliters, which is nearly four times the legal limit to drive a vehicle in Kansas.

On June 15, 2017, the State charged Merrill with two counts of aggravated battery while driving under the influence in violation of K.S.A. 8-1567 and K.S.A. 21-5413(b).

4

The first count arises out of the injuries suffered by Dillard and the second count arises out of the injuries suffered by her elderly mother. The State also charged Merrill with one count of misdemeanor refusal of a preliminary breath test, but that count was dismissed before trial.

Subsequently, Merrill filed motions to suppress statements that she made to police and to suppress evidence of the results of her blood alcohol test. In response the State agreed that it would not use the statements Merrill made while in police custody at trial. Although the district court suppressed the results of Merrill's blood alcohol test, this decision was reversed in an interlocutory appeal filed by the State. See *State v. Merrill*, No. 121,912, 2020 WL 5083528, at *11 (Kan. App. 2020) (unpublished opinion).

Merrill waived her right to a jury trial and the district court held a one-day bench trial on June 7, 2022. At trial, the State presented 14 witnesses and introduced 28 exhibits that were admitted into evidence. After the State rested, Merrill exercised her right not to testify or present any witnesses. Merrill admitted three maps as exhibits that purportedly showed the location of the Kansas-Missouri border on State Line Road near 128th Street. Much of the evidence presented at trial related to where the collision and other events occurred in relationship to the Kansas-Missouri border.

Dillard testified that the accident occurred in the left southbound lane as she was stopped at a traffic signal located at the intersection of 128th Street and State Line Road. She described seeing Merrill's car in her rearview mirror as it sped toward her. Dillard also testified about the injuries she suffered in the crash, which included multiple broken ribs. According to Dillard, she was off work for several months as a result of the collision and continued to suffer from ongoing discomfort in the chest.

Likewise, Dillard testified about the injuries that her mother—who died in 2018— had suffered when they were rear-ended by Merrill. These injuries included multiple

broken ribs and a fractured sternum. Dillard also testified that her mother had previously lived independently but needed assistance to care for herself after the accident.

Similarly, Shull testified that she was stopped in the left lane at the intersection of 128th Street and State Line Road waiting for a red light when the crash occurred. The State also presented the testimony of Timothy Peters who testified that he first saw Merrill's vehicle turning from eastbound 124th Street in Leawood onto southbound State Line Road. He explained that Merrill's vehicle caught his attention because it pulled out in front of him as he was driving south on State Line Road. Peters further testified that he saw the crash occur in the southbound lane of State Line Road. Peters spoke with Merrill at the scene of the crash, and he testified that he detected a "slight odor" of alcohol.

Jeremiah Buck testified that he also saw Merrill's vehicle as it pulled out of a neighborhood traveling eastbound on 124th Street and turned onto southbound State Line Road. He testified that he noticed that her vehicle was being driven "erratically" prior to the accident. Buck observed her vehicle crossing between the northbound and southbound lanes of State Line Road. Although Buck did not see the actual collision, he confirmed that he saw the wreckage in the left southbound lane of State Line Road as he was driving south toward the intersection of 128th Street and State Line Road. Additionally, Pedro Arrieta Martinez testified that he saw the crash occur in the left lane of southbound State Line Road near 128th Street.

Several police officers from the Leawood Police Department also testified at trial regarding the events on November 18, 2016, and their investigation of the collision. Officer Shields testified about responding to the scene of the crash, his interactions with Merrill, and his investigation. Video footage from Officer Shields' body camera documenting his interaction with Merrill at the scene was admitted into evidence during his testimony.

In addition, Officer Shields testified about his training and experience with the Leawood Police Department. Officer Shields testified that his training included understanding the location of the Kansas-Missouri border in Leawood. He testified that the Leawood Police Department provides officers with a paper copy of a map showing the boundary and ensures officers have this map downloaded on the computer in their patrol vehicles. Officer Shields stated that he also carries a copy of the map on his motorcycle. The district court admitted a copy of this map into evidence only to show where officers of the Leawood Police Department understood the state boundary to be located. Based on this map, Officer Shields testified that his understanding—based on his training with the Leawood Police Department—was that the Kansas-Missouri border in the area in which the crash occurred ran down the middle of the left southbound lane of State Line Road.

Detective Curtis Rice—who was assigned to follow up with the eyewitnesses after the crash—testified that he had been taught during his training with the Leawood Police Department that the southbound lanes of State Line Road near the intersection of 128th Street are in Kansas. Although Merrill's counsel objected to this testimony, the district court overruled the objection and ruled that Detective Rice could "testify about his understanding as a law enforcement officer about the boundary." Officer Phil Goff—who was dispatched to the accident scene—testified that he also believed based on his training and experience with the Leawood Police Department that the accident occurred in Kansas.

Officer Mark Chudik—who is an accident reconstructionist for the Leawood Police Department—testified about his work on the case. In particular, he testified about producing a diagram depicting the location of the vehicles based on his reconstruction of the crash from his body camera footage. Officer Chudik testified that he determined Merrill's vehicle struck Dillard's vehicle in the rear while traveling in the center of the left southbound lane of State Line Road. In addition, he testified that Merrill's vehicle

collided with Shull's vehicle in the same lane. Officer Chudik further testified that he saw nothing to suggest to him that the crash occurred in the northbound lanes of State Line Road.

Additionally, Corporal Matthew Schroeder testified about his role in reconstructing and investigating the accident. Corporal Schroeder testified that the diagram he created—and which was admitted into evidence—utilized Officer Chudik's measurements taken at the scene of the collision. This diagram also depicted Merrill striking both vehicles in the left southbound lane of State Line Road.

As for the location of the Kansas-Missouri border, the State called Travis Wagner—an Automated Information Mapping System (AIMS) and Geographic Information System Supervisor for the Johnson County Department of Technology—as a witness. Wagner explained that Johnson County's AIMS team uses a specialized subscription automated mapping software to provide mapping solutions for county departments, municipalities, utility companies, and citizens. He also testified about the various types of data kept and maintained by the AIMS team.

During Wagner's testimony, the State introduced a map—which was marked as Exhibit 28—showing the Kansas-Missouri border near the scene of the collision. The map showed the location of the Kansas-Missouri border—depicted by a red line—as running north and south down the center of the left southbound lane of State Line Road. Wagner testified that the map was created using Johnson County's automated mapping software. Wagner explained that the Johnson County Public Works department had retained the engineering firm Shafer, Kline & Warren (SKW) in 2011 to survey the state line based on "the geographic section corners for the state line." He stated that the AIMS team relied on SKW for survey data regarding the location of the Kansas-Missouri border. Wagner testified that to generate the map in Exhibit 28, he simply overlayed the

2011 survey data over an aerial image taken by the AIMS team in 2020. He described his role in the process to be "connect[ing] the dots based on [the] survey information."

Wagner further testified that the data reflected in Exhibit 28 regarding the Kansas-Missouri border had been stored in the Johnson County AIMS database since 2011 or 2012. He also testified that the data reflected in Exhibit 28 "is the best information we have available to represent the state line." Furthermore, Wagner testified that he was unaware of any changes in the survey data for the area in which the accident occurred since 2011.

Merrill objected to the admission of Exhibit 28 and Wagner's testimony solely on the grounds that Exhibit 28 was not produced nor was a summary or report of Wagner's testimony provided as part of expert discovery under K.S.A. 22-3212. Specifically, Merrill's counsel argued that the statute requires the State to give "a report or a summary [of] what [an expert is] going to say." In response, the State argued that it was not seeking to elicit expert opinions from Wagner. Rather, it argued that he was testifying as a records custodian to authenticate and lay the foundation for the exhibit. The district court agreed and overruled Merrill's objection.

On cross-examination, Merrill's counsel asked Wagner about four other maps kept and maintained by the AIMS team. Three of these maps were admitted into evidence, each of which showed the Kansas-Missouri border in different locations from that shown on Exhibit 28. Merrill's counsel introduced Exhibit A—a publicly available map on the AIMS website created from Google Maps imagery—which was not admitted into evidence because of a lack of foundation. Merrill's counsel then introduced and admitted into evidence Exhibit B—a publicly available map on the AIMS website produced by a third-party, OpenStreetMap. Exhibit B showed the Kansas-Missouri border to be west of all the southbound lanes of State Line Road.

9

Merrill's counsel then introduced and admitted into evidence Exhibit C—another publicly available map on the AIMS website created with AIMS imagery taken in 2000. Exhibit C showed the Kansas-Missouri border to be in the middle of the right southbound lane of State Line Road. Finally, Merrill's counsel introduced and admitted into evidence Exhibit D—a publicly available map on the AIMS website created with AIMS imagery taken in 2006. Wagner testified that these other maps were not as reliable as the map in Exhibit 28 because Exhibit 28 was created with the 2011 survey and 2020 imagery, which were the most up to date and accurate data to show the Kansas-Missouri border on State Line Road.

After both parties rested and their counsel presented closing arguments, the district court took the case under advisement. The next day, the district court announced its verdict from the bench. In finding Merrill guilty of both counts of aggravated battery while driving under the influence, the district court recognized that the most difficult questions presented were "whether the Court is the proper venue for Ms. Merrill to be prosecuted and whether this Court has jurisdiction over Ms. Merrill and the subject matter of this even[t] and the aggravated . . . batteries that occurred on November 18, 2016."

In resolving the questions of venue and jurisdiction, the district court found:

"Various maps with perceived lines of the dividing line between Kansas and Missouri along State Line Road were admitted into evidence. This Court chooses to conclude that *the evidence established beyond a reasonable doubt that Exhibit 28 reflects the most accurate location of the actual state line dividing Kansas and Missouri at or around the area of 124th to 128th Streets along State Line Road. Exhibit 28 shows that the boundary divider effectively runs down the middle of the left southbound lane of State Line Road. This map was completed as part of a survey performed for Johnson County in late 2011 or early 2012, and the evidence showed that the red dividing line referencing the state line was inserted upon the map based upon the data provided within the survey.*

Mr. Wagner testified that the boundary lines have not changed much after the survey and the map were completed before 2017, *thus Ms. Merrill was operating her vehicle in both Kansas and Missouri while she returned to the left southbound lane and collid[ed] into M[s]. Dillard's and Ms. Shull's vehicles.*

"Notwithstanding the Court's conclusions that the left southbound lane is located at least partially within Leawood, Johnson County, Kansas. *This court is the proper venue based on . . . [K.S.A.] 22-2603 or 22-2604, which I read earlier. And jurisdiction is based on 21-5106 and that the evidence establishes that a material element of the offense, operating a vehicle while under the influence of alcohol, occurred within Johnson County, Kansas.*

"Missouri state statute R.S.M.O. 541.033 has similar language as the Kansas statute on venue. When an offense is partly committed in one county and partly in another, or if the elements of the crime occur in more than one county, the prosecution may proceed that any of the counties where any element of the offense occurred. As a result, the Court finds the defendant, Beth Janice Merrill, guilty beyond a reasonable doubt on Counts I and II of DUI aggravated battery." (Emphases added.)

Prior to sentencing, Merrill filed a motion for judgment of acquittal as well as a motion for dispositional and/or durational departure. At the sentencing hearing held on December 29, 2022, the district court denied both motions. In denying the motion for judgment of acquittal, it found that a material element of Merrill's crimes occurred at least partly in Kansas when she drove in Kansas under the influence of alcohol immediately prior to the collision. In addition, the district court found that even if Exhibit 28 had been admitted in error, the map in Exhibit 28 was consistent with other testimony as to the location of the Kansas-Missouri border on State Line Road.

Although the State requested that a controlling sentence of 94 months of imprisonment be imposed, the district court exercised its discretion to impose a mid-range presumptive prison sentence of 57 months on the first count. The district court then imposed a concurrent 32-month sentence on the second count. In addition, the district

11

court ordered 24 months of postrelease supervision. Even so, it did not order the payment of restitution because a claim for damages was being handled in a civil action.

ANALYSIS

*Territorial Jurisdiction*

On appeal, Merrill contends that Kansas lacked territorial jurisdiction to prosecute her in this case. Whether territorial jurisdiction exists is a question of law over which we have unlimited review. See *State v. Rupnick*, 280 Kan. 720, 741, 125 P.3d 541 (2005). Interpretation of a statute is also a question of law over which we have unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021). On the other hand, venue—which also must be proven to establish jurisdiction—is a question of fact. See *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022).

In Kansas, territorial jurisdiction is governed by the provisions of K.S.A. 21-5106. The statute provides that Kansas courts have territorial jurisdiction if a defendant commits "a crime wholly or partly within this state." K.S.A. 21-5106(a)(1). In turn, K.S.A. 21-5106(b) sets out the circumstances under which a crime is considered to be committed partly in Kansas:

> "(b) A crime is committed partly within this state if:
>
> (1) An act which is a constituent and material element of the offense;
>
> (2) an act which is a substantial and integral part of an overall continuing criminal plan; or
>
> (3) the proximate result of such act, occurs within the state."

In other words, "[t]he State of Kansas has jurisdiction in a criminal case in which any element or the result of the crime occurs in Kansas . . . ." *State v. Grissom*, 251 Kan. 851, Syl. ¶ 5, 840 P.2d 1142 (1992).

It is also important to recognize that although a person cannot be convicted of the same crime in more than one state, it is possible for Kansas and a bordering state to have "concurrent jurisdiction" to prosecute the same conduct. "The concept of concurrent jurisdiction entails two different courts having jurisdiction over the subject matter of the controversy and either court being a proper forum for its resolution." *State v. Russell*, 229 Kan. 124, 131, 622 P.2d 658 (1981). Accordingly, K.S.A. 21-5106(e) provides that "[i]t is not a defense that the person's conduct is also a crime under the laws of another state or of the United States or of another country."

Although the ultimate issue of whether Kansas has territorial jurisdiction over a criminal case is a question of law, K.S.A. 21-5106(g) instructs that the determination of whether a crime occurred wholly or partly within Kansas can involve factual questions that must "be determined by the court by the preponderance of the evidence." As the Kansas Supreme Court has found, it is necessary to examine the evidence in light of the statutory territorial jurisdictional provisions. See *State v. Rozell*, 315 Kan. 295, 299, 508 P.3d 358 (2022). Our Supreme Court has also found it is appropriate for the State to rely on circumstantial evidence to establish territorial jurisdiction. See *Rupnick*, 280 Kan. 720, Syl. ¶ 17.

In *State v. Grissom*, 251 Kan. at 889, the Kansas Supreme Court found that a broad interpretation of the territorial jurisdiction statute is appropriate. In reaching this conclusion, our Supreme Court discussed the similarities between the territorial jurisdiction statute and venue statutes:

13

"Although jurisdiction and venue are different, an analogy can be made to the venue statutes. For example, if a crime is committed in two counties, either county has venue. K.S.A. 22-2603. If a crime is committed on or so near the boundary of two counties that it cannot be determined in which county the crime occurred, either county has venue. K.S.A. 22-2604." 251 Kan. at 889.

Here, the district court was faced with the question of whether Merrill's criminal conduct occurred in Kansas, in Missouri, or in both states. If any material element of Merrill's crimes occurred wholly or partly in this state, then Kansas had territorial jurisdiction to prosecute. See K.S.A. 21-5106(a)(1), (b)(1). As a result, only if all the material elements of her crimes of conviction occurred solely in Missouri would Kansas not have jurisdiction to prosecute Merrill for her crimes.

After hearing the evidence presented at the bench trial and considering the arguments of counsel, the district court determined that territorial jurisdiction in Kansas was appropriate under K.S.A. 21-5106. A review of the record confirms that in reaching this determination, the district court correctly recognized that "[v]enue is a question of fact for the factfinder" while "[j]urisdiction is a question of law." Moreover, in analyzing where the material elements of the crimes occurred in relationship to the Kansas-Missouri border, the district court appropriately considered and weighed the evidence presented at trial in reaching its decision.

Based on our review of the record on appeal, we find that the district court correctly applied the law regarding the interrelated questions of venue and territorial jurisdiction. After weighing the conflicting evidence, the district court ultimately determined that "the evidence established *beyond a reasonable doubt* that Exhibit 28 reflects the most accurate location of the actual state line dividing Kansas and Missouri at or around the area of 124th to 128th Streets along State Line Road." (Emphasis added.) As discussed above, Exhibit 28 shows the Kansas border runs down the middle of the left southbound lane of State Line Road where the collision in this case occurred.

14

We find the district court's determination that the material element of where the crash occurred was at least partially in Kansas is supported by the evidence. Likewise, there is sufficient evidence in the record to support the district court's determination that Merrill was "operating or attempting to operate any vehicle within this state" while intoxicated. K.S.A. 8-1567(a). As the State points out, this is also a material element of the offense of aggravated battery while driving under the influence—as set forth in K.S.A. 21-5413(b)(3) and K.S.A. 8-1567. In ruling on the motion for judgment of acquittal the district court again found that one or more material elements of the crime of aggravated battery while driving under the influence were committed in Kansas. The district court explained that the evidence established that Merrill participated in "continuing criminal activity from the time she was driving the car in Kansas, turned onto State Line Road, was weaving back and forth before the accident took place, which was less than four blocks away" from the scene of the crash.

Consequently, we conclude that the district court appropriately applied Kansas law in determining that territorial jurisdiction was proper in this state because one or more material elements of the offense of aggravated battery while driving under the influence occurred wholly or partly within this state.

*Constitutionality of K.S.A. 21-5106(g)*

Merrill briefly argues that K.S.A. 21-5106(g) "may be unconstitutional." Without developing this argument, she suggests that "the statute may have a constitutionality problem in the second clause, where 'preponderance' is employed by the Kansas Legislature as the evidentiary burden, rather than 'beyond a reasonable doubt.'" Yet this issue was not presented to the district court, and Merrill has offered no reason why we should consider it for the first time on appeal. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022) (holding that issues not raised before the district court cannot be raised on appeal); see also Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) (requiring

15

an appellant to explain why an issue that was not raised below should be considered for the first time on appeal). Because this issue was not raised below nor is it developed in Merrill's brief, we decline the invitation to consider it for the first time on appeal.

*Admission of Evidence at Trial*

Merrill also contends that the district court should have found some of the State's evidence regarding the location of the Kansas-Missouri border to be inadmissible because it was based on hearsay. But a review of the record reveals that Merrill did not assert a contemporaneous hearsay objection to either the testimony of the AIMS Supervisor or to the admission of Exhibit 28 into evidence. As indicated above, the district court primarily relied on this exhibit in determining the location of the border between Kansas and Missouri. Specifically, the district court found that "the evidence established beyond a reasonable doubt that Exhibit 28 reflects the most accurate location of the actual state line dividing Kansas and Missouri around the area of 124th to 128th Streets along State Line Road." As a result, the district court determined that "Merrill was operating her vehicle in both Kansas and Missouri" when the accident occurred.

"The contemporaneous objection rule is set forth in K.S.A. 60-404, which generally precludes an appellate court from reviewing an evidentiary challenge absent a *timely and specific objection* made on the record." (Emphasis added.) *State v. Showalter*, 318 Kan. 338, 345, 543 P.3d 508 (2024) (citing *State v. Ballou*, 310 Kan. 591, 613-14, 448 P.3d 479 [2019]). This is true even when constitutional rights are in question. *State v. Solis*, 305 Kan. 55, 63-64, 378 P.3d 532 (2016). As our Supreme Court has found, an evidentiary objection must not only be timely asserted but also must be specific. Furthermore, a party may not object to the admission of evidence on one ground at trial and then attempt to assert a different ground on appeal. *State v. George*, 311 Kan. 693, 701, 466 P.3d 469 (2020).

16

Here, the record shows that Merrill only objected to Exhibit 28 on the ground that the State had failed to produce Exhibit 28 "pursuant to K.S.A. 22-3212, the expert discovery [statute]." Significantly, Merrill does not challenge the district court's ruling regarding her K.S.A. 22-3212 objection, which was overruled by the district court. Consequently, Merrill is attempting to assert an evidentiary challenge on appeal that is different from the one she asserted at trial. Because she did not make a contemporaneous and specific hearsay objection at trial as to the admission of Exhibit 28 or as to the testimony of the AIMS Supervisor, we find that her hearsay challenge to this exhibit is not preserved for appeal.

Merrill did assert a hearsay objection to the testimony of Detective Rice when he was asked about his training and experience regarding what he had been taught on the location of the Kansas and Missouri border. She also objected to this evidence on the ground that it violated her right to confront the witnesses against her under the Confrontation Clause of the Sixth Amendment to the United States Constitution. See U.S. Const. amend. VI; see also Kan. Const. Bill of Rights, § 10. However, even if we assume that Detective Rice's testimony regarding what he was taught about the Kansas-Missouri border was inadmissible, we find that any such error was harmless because there was sufficient admissible evidence presented at trial on territorial jurisdiction. See K.S.A. 2023 Supp. 60-261; see also *State v. Williams*, 306 Kan. 175, 202-03, 392 P.3d 1267 (2017).

Even an error that infringes on a party's constitutional rights is considered to be harmless if the party benefiting from the error—in this case the State—persuades us "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]). As addressed

17

above, the district court primarily relied on Exhibit 28 to determine the location of the Kansas-Missouri border near the intersection of 128th Street and State Line Road. Relying on this exhibit and other evidence indicating that the collision occurred in the left southbound lane of State Line Road, the district court concluded that Merrill committed her crimes of conviction at least partially in Kansas.

In denying Merrill's motion for judgment of acquittal, the district court explained that it also found territorial jurisdiction was appropriate in Kansas because Merrill was observed driving erratically in Kansas in the moments before the collision. As discussed above, eyewitnesses testified that they observed her leaving a neighborhood in Johnson County, driving eastbound on 124th Street in Johnson County toward State Line Road, turning south on State Line Road, having difficulty keeping her vehicle in her lane, and striking two vehicles from the rear without slowing down. Moreover, Merrill did not object when Officer Shields testified that witnesses told him they saw her driving on 124th Street only moments before the crash, and he stated that 124th Street and State Line Road is in Johnson County. Based on this evidence as well as on the evidence showing that Merrill's blood alcohol content was still nearly four times the legal limit two hours after the crash, it was reasonable for the district court to conclude that the material elements of the crime of aggravated battery while driving under the influence of alcohol occurred at least partly in Kansas. See K.S.A. 21-5106(a)(1), (b)(1). Thus, we conclude based on a review of the entire record that there is no reasonable possibility that the alleged errors affected the outcome of the bench trial.

*Breath Test Refusal*

Next, Merrill contends that evidence of her refusal to submit to a breath test should have been excluded because the implied consent advisory—also known as a DC-70 form—that she received from Officer Shields did not comply with the statutory

18

requirements in effect at the time of her arrest. In response, the State contends that the DC-70 form substantially complied with Kansas law. We agree.

K.S.A. 2016 Supp. 8-1001(k)—which was in effect at the time of Merrill's arrest—required law enforcement officers to provide a driver with an implied consent advisory or DC-70 form before requesting a driver to submit to a breathalyzer test. Our Supreme Court has ruled that substantial compliance with the implied consent advisory statute is sufficient. Substantial compliance in this context means that law enforcement officers are to provide information to drivers that is adequate to inform them of the essential components of the statute. See *City of Overland Park v. Lull*, 51 Kan. App. 2d 588, 591, 349 P.3d 1278 (2015) (citing *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 [1988]).

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures by government officials. When reviewing a motion to suppress evidence, a district court's factual findings are reviewed for substantial competent evidence and its ultimate legal conclusion is reviewed de novo. Because the parties do not dispute the material facts surrounding Merrill's breath test refusal in this case, our review of this issue is unlimited. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

Among other things, K.S.A. 2016 Supp. 8-1001(k)(2) required an officer to advise a driver that he or she had no constitutional right to refuse consent to the requested test. In addition, K.S.A. 2016 Supp. 8-1001(k)(4) required an officer to advise that a test refusal may subject the driver to a separate criminal penalty. But the Kansas Supreme Court found both of these statutory notices to be unconstitutional. See *State v. Ryce*, 303 Kan. 899, Syl. ¶ 9, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*); *State v. Nece*, 303 Kan. 888, 889, 897, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*).

Our Supreme Court handed down the decisions in both *Ryce I* and *Nece I* on February 26, 2016. On the same day, the Kansas Attorney General and Kansas Department of Revenue issued a revised DC-70 form that conformed to the holdings in those decisions. The revised DC-70 form—which was read aloud and provided to Merrill in this case—did not include the statutory notices that our Supreme Court had declared unconstitutional. See *State v. Barta*, No. 117,990, 2018 WL 1883878, at *3 (Kan. App. 2018) (unpublished opinion).

It is undisputed that on November 18, 2016, Officer Shields arrested Merrill at the scene of the crash and transported her to the Leawood Police Department. At the police station, Officer Shields provided Merrill with the revised DC-70 form and read it to her out loud. Nevertheless, Merrill refused to submit to the breathalyzer test. As a result, a search warrant was obtained and Merrill was transported to Menorah Medical Center where a blood sample was collected. Later, the blood sample was delivered to the KBI for testing. Based on this testing, it was determined that Merrill's blood alcohol content was .31 grams per 100 milliliters, or nearly four times the legal limit for operating a motor vehicle within this state.

The revised DC-70 form provided and read aloud to Merrill contained the following notices:

> "1. Kansas law (K.S.A. 8-1001) requires you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol or drugs or both.
> . . . .
> "3. If you refuse to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, your driving privileges will be suspended for 1 year.

"4. If you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .15 or greater, your driving privileges will be suspended for 1 year.

"5. If you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .08 or greater, but less than .15, the length of suspension will depend upon whether you have a prior occurrence.

. . . .

"8. Refusal to submit to testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both."

Notwithstanding the holdings in *Ryce I* and *Nece I*, Merrill argues on appeal that the revised DC-70 form provided to her on November 18, 2016, should have continued to include the statutory notice provisions found in K.S.A. 2016 Supp. 8-1001(k)(2) and (4) that were previously found to be unconstitutional. Merrill contends that the advisory was thus not in substantial compliance with the statute, and as such, her breath test refusal was coerced. Significantly, this court has previously rejected similar arguments on multiple occasions. See *State v. Barta*, 2018 WL 1883878, at *3-5 ("[T]he provisions of the [revised] DC-70 advisory . . . remain valid and do not amount to unconstitutional coercion of a suspect driver's consent to testing.").

In *State v. Barta*, the panel explained:

"Here, Barta was given the statutory warnings contained in a revised DC-70 form which eliminated the provisions found unconstitutionally coercive in *Ryce*. He contends that the officer's failure to give the complete advisories set forth in the statute renders the revised warnings unconstitutional and required suppression of the test results.

"But in enacting the Kansas implied consent law, the Legislature provided a severability clause which provided that the remaining provisions of the Act should be enforced in the event that provisions of the law are declared unconstitutional. K.S.A. 8-1007 states:

21

"'This act shall be construed as supplemental to existing legislation; and if any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section.'

"Pursuant to this statute, the Kansas Attorney General amended the DC-70 to delete its unconstitutional provisions. As stated in *State v. Limon*, 280 Kan. 275, 304, 122 P.3d 22 (2005): '"[T]he enactment of a severability clause in a statute or series of statutes evidences the intent of the legislature that if some portion or phrase in the statute is unconstitutional, the balance shall be deemed valid." [Citation omitted.]' Here, the Legislature unequivocally expressed its intent that if a portion of the Kansas implied consent law was found to be unconstitutional, the remaining provisions of the statute survive.

"*Substantial Compliance*

"Because K.S.A. 8-1001 et seq. is remedial in nature and is to be liberally construed, '"it is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient" when advising a driver of his or her rights under the Kansas implied consent law, provided that the notice in question "conveyed the essentials of the statute and did not mislead the appellant." [Citation omitted.]' *Hoeffner v Kansas Dept. of Revenue*, 50 Kan. App. 2d 878, 883, 335 P.3d 684 (2014), *aff'd* No. 110,323, 2016 WL 6248316 (Kan. 2016) (unpublished opinion). In deleting the unconstitutionally coercive provisions of the statute and the original DC-70 advisory, the officer who arrested Barta substantially complied with our implied consent law in advising him. Substantial compliance did not require the officer to misadvise Barta of the possible adverse consequences of withdrawing his consent." *Barta*, 2018 WL 1883878, at *4-5.

Although we will not discuss each of the cases in detail, we find it to be significant that numerous panels of this court have consistently concluded that the revised DC-70 form—with the omission of the statutory notice provisions invalidated by *Ryce I* and *Nece I*—substantially complies with the statutory implied consent advisory requirements.

22

See *City of Hutchinson v. Smith*, No. 119,403, 2020 WL 2091077, at \*2 (Kan. App. 2020) (unpublished opinion) ("Failing to inform someone of an unconstitutional statute can't be an irregular performance of an obligation to provide a substantially accurate statement of the relevant law."); *Leivian v. Kansas Dept. of Revenue*, No. 119,249, 2019 WL 166541, at \*5 (Kan. App. 2019) (unpublished opinion) (finding that the notices provided in the revised DC-70 form "substantially comply with the statutory requirements"); *Ackerman v. Kansas Dept. of Revenue*, No. 118,128, 2018 WL 3673168, at \*3 (Kan. App. 2018) (unpublished opinion) ("The language within the revised DC-70 substantially complies with the notices that are required post-*Ryce*."), *rev. denied* 310 Kan. 1061 (2019); *Bynum v. Kansas Dept. of Revenue*, No. 117,874, 2018 WL 2451808, at \*4 (Kan. App. 2018) (unpublished opinion) ("We find the analysis and conclusions set forth in *Barta* and *White* to be pertinent, persuasive, and determinative of the issues herein."); *White v. Kansas Dept. of Revenue*, No. 117,956, 2018 WL 1769396, at \*5 (Kan. App. 2018) (unpublished opinion) (Finding the revised DC-70 form the driver "was provided did not vitiate her consent to the test. Her consent to the test was voluntary and free from the coercion condemned in *Ryce* and *Nece*.").

We find the reasoning of these decisions in addressing this issue to be sound, and we find their consistency to be persuasive. Although in some cases the driver consented to take the requested breath test while in other cases the driver refused, we do not find this to be a material distinction because "the arguments presented [in each case] are virtually indistinguishable." *Bynum*, 2018 WL 2451808, at \*4. Consequently, like other panels before us, we find that the revised DC-70 form delivered and read to Merrill on November 18, 2016, substantially complied with the statutory implied consent advisory notices in effect at the time she committed her crimes.

Hence, we also find that Merrill has failed to establish that the revised DC-70 form was coercive or that she suffered prejudice. Accordingly, we conclude that the district

23

court did not err in denying Merrill's motion to suppress or her objection to the evidence admitted at trial regarding her refusal to submit to a breath test.

*Application of K.S.A. 2016 Supp. 21-6811(c)(3) at Sentencing*

Merrill's final contention on appeal is that the district court erred in applying K.S.A. 2016 Supp. 21-6811(c)(3)—known as special sentencing rule 44—in imposing her sentence. She argues that the statute is unconstitutional as applied to her because it violates the Ex Post Facto Clause of the United States Constitution. In support of this argument, Merrill asserts that K.S.A. 2016 Supp. 21-6811(c)(3) improperly reclassified her prior DUI offenses for which she had completed her diversion requirements. In response, the State contends that the statute does not violate the Ex Post Facto Clause because it does not increase the penalties imposed in her prior criminal cases but only increases the penalty for her current crimes of conviction.

On May 7, 2018, Merrill filed a pretrial motion challenging the constitutionality of K.S.A. 2016 Supp. 21-6811(c)(3). It is unclear from a review of the record on appeal whether the district court ever expressly ruled on the motion. Regardless, the State candidly conceded at oral argument that the issue was preserved because the district court applied K.S.A. 2016 Supp. 21-6811(c)(3) in determining Merrill's criminal history score at sentencing.

In Kansas, "[t]he legislature alone has the authority to define crimes and prescribe punishments." *State v. Todd*, 299 Kan. 263, 276, 323 P.3d 829 (2014). But this power is not unlimited. Pursuant to Article 1, § 10 of the United States Constitution, states are prohibited from passing any ex post facto laws. For a criminal law to be deemed ex post facto, "'it must be retrospective, that is it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. [Citations omitted.]'" *Todd*, 299 Kan. at 278.

24

The United States Supreme Court has held that enhancement statutes—including criminal history and recidivist provisions—do not violate the Ex Post Facto Clause of the United States Constitution. This is because enhancement statutes "do not change the penalty imposed for the earlier conviction" and "penaliz[e] only the last offense committed by the defendant." *Nichols v. United States*, 511 U.S. 738, 747, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994). Our Supreme Court has also recognized this legal principle. See *State v. Keel*, 302 Kan. 560, 589, 357 P.3d 251 (2015); see also *State v. Overton*, 279 Kan. 547, 561, 112 P.3d 244 (2005) ("[T]he fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.").

In 2015, the Kansas Legislature passed House Bill 2055 which amended K.S.A. 21-6811. This amendment added subsection (c)(3) which addresses the calculation of a defendant's criminal history score when the current crime of conviction is aggravated battery while driving under the influence. L. 2015, ch. 90, § 2. This amendment took effect on July 1, 2015, which was more than a year prior to Merrill committing the crimes for which she was convicted in this case. See L. 2015, ch. 90, § 2; see also *State v. Murphy*, No. 115,260, 2017 WL 2001598, at *3 (Kan. App. 2017) (unpublished opinion).

K.S.A. 2016 Supp. 21-6811(c)(3) provided:

"(3) If the current crime of conviction is for a violation of K.S.A. 21-5413(b)(3), and amendments thereto:

(A) The first prior adult conviction, diversion in lieu of criminal prosecution or juvenile adjudication for the following shall count as one nonperson felony for criminal history purposes:  (i) Any act described in K.S.A. 8-2,144 or 8-1567 or K.S.A. 8-1025, and amendments thereto; or (ii) a violation of a law of another state or an ordinance of any city, or resolution of any county, which prohibits any act described in K.S.A. 8-2,144 or 8-1567 or K.S.A. 8-1025, and amendments thereto; and

(B) each second or subsequent prior adult conviction, diversion in lieu of criminal prosecution or juvenile adjudication for the following shall count as one person felony for criminal history purposes: (i) Any act described in K.S.A. 8-2,144 or 8-1567 or K.S.A. 8-1025, and amendments thereto; or (ii) a violation of a law of another state or an ordinance of any city, or resolution of any county, which prohibits any act described in K.S.A. 8-2,144 or 8-1567 or K.S.A. 8-1025, and amendments thereto."

Kansas appellate courts have not previously addressed whether K.S.A. 2016 Supp. 21-6811(c)(3) violates the Ex Post Facto Clause. However, this court has found that by enacting the 2015 amendment, "[t]he Kansas Legislature has specifically and unambiguously spoken out regarding how a defendant convicted of aggravated battery while DUI should have his [or her] prior DUI convictions scored for criminal history purposes." *State v. Obiero*, No. 121,341, 2022 WL 1205982, at *7 (Kan. App.) (unpublished opinion), *rev. denied* 316 Kan. 762 (2022). Further, this court has upheld a prospective enhancement of driving under the influence conviction under K.S.A. 8-1567. *State v. Campbell*, 9 Kan. App. 2d 474, 476-77, 681 P.2d 679 (1984).

In *State v. Campbell*, the panel found that "[t]he provisions of K.S.A. 8-1567, as amended, which provide for mandatory increased penalties for repeat offenders, do not make the statute an ex post facto law even though a defendant's prior convictions were for violations of statutes or ordinances which contained no similar provisions." 9 Kan. App. 2d 474, Syl. ¶ 3; see also *State v. Jones*, 214 Kan. 568, 570, 521 P.2d 278 (1974) ("A repeating offender is not punished for the prior offense or offenses, but the Legislature has declared that repeated violations justify the enhanced penalty.") Likewise, in *City of Norton v. Hurt*, 275 Kan. 521, 522-24, 66 P.3d 870 (2003), our Supreme Court held that a 2001 amendment to K.S.A. 8-1567—that became effective before the defendant's second DUI offense—was not an ex post facto law because it "did not operate retroactively to increase the penalty for [the] driver's prior DUI offense. . . . [A]nd [it] increased the penalty for the second violation only."

Because the 2015 amendment to K.S.A. 21-6811(c)(3) became effective more than a year before Merrill committed her crimes of conviction in this case, we find that she had reasonable notice of the change in the law. As a consequence of the amendment, Merrill's current convictions for aggravated battery while driving under the influence triggered the application of the enhancement of her criminal history score under K.S.A. 2016 Supp. 21-6811(c)(3). Although the application of K.S.A. 2016 Supp. 21-6811(c)(3) increased Merrill's penalty for her current crimes of conviction, it did not operate retroactively to increase the penalty for her prior DUI offenses.

In other words, the terms of her prior diversions did not change nor have the penalties for her 2006 and 2012 DUIs increased. Rather, the 2015 amendment to K.S.A. 21-6811 only increased the penalty for her current aggravated battery while driving under the influence convictions. We therefore conclude that K.S.A. 2016 Supp. 21-6811(c)(3) is not unconstitutional as applied to Merrill and that it was appropriately used by the district court in this case to determine her criminal history score. Thus, K.S.A. 21-6811(c)(3) does not violate the Ex Post Facto Clause of the United States Constitution.

CONCLUSION

A review of the record before us shows that the district court properly exercised territorial jurisdiction over this case. In determining that Kansas has territorial jurisdiction as a matter of law, the district court appropriately applied the provisions of K.S.A. 21-5106 to the evidence presented at the bench trial. Furthermore, Merrill failed to preserve some alleged errors for appeal, and we find that any error in admitting the testimony of law enforcement regarding their training on the location of the Kansas-Missouri border was harmless.

We also find that the district court did not err in admitting evidence of Merrill's breath test refusal because the implied consent advisory provided to her by law

27

enforcement substantially complied with the provisions of K.S.A. 2016 Supp. 8-1001. Additionally, we find that the district court's application of K.S.A. 2016 Supp. 21-6811(c)(3) at sentencing did not violate the Ex Post Facto Clause of the United States Constitution because it only increased the penalty for her current convictions. We, therefore, affirm Merrill's convictions and the sentence imposed.

Affirmed.