**STATE of Missouri, Respondent,**

v.

**Darrell L. BAUMANN, Appellant.**

**Nos. 27713, 27712.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 28, 2007.

Thomas E. Klinginsmith, Carthage, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jaime Wilson Corman, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Darrell L. Baumann ("Appellant") was convicted following a jury trial for the class C felony of tampering with a motor vehicle in the first degree, a violation of section 569.080.1(2); the unclassified felony of armed criminal action, a violation of section 571.015, involving the use of a "dangerous instrument," a knife; and the class A misdemeanor of violation of an order of protection, a violation of section 455.085.[1] The trial court sentenced Appellant to three years in the Missouri Department of Corrections for armed criminal action and one year in the Jasper County Jail for violating the order of protection with the latter sentence running consecutive to the three year sentence for armed criminal action. Appellant was also fined $5,000.00 for tampering with a motor vehicle and $1,000.00 for violating the order of protection.

Appellant raises two points of trial court error in this consolidated appeal. In his point relied on in his first appeal, number 27712, Appellant maintains the trial court erred in denying his motion for judgment of acquittal as to the armed criminal action charge because there was insufficient evidence to prove beyond a reasonable doubt that "the knife used at the time of the damage to the van's tires was ... a dangerous instrument or deadly weapon as

---

1. This Court has consolidated the two separate appeals of those charges for purposes of this opinion and for oral argument.

All statutory references are to RSMo 2000.

required by [section] 571.015.1 . . . ." [2] In his point relied on in his second appeal, number 27713, Appellant maintains the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to prove beyond a reasonable doubt that he violated a protective order entered in favor of Rodney Bray ("Mr. Bray") "in that the State failed to establish that [Appellant] entered upon a premises where [Mr. Bray] resided or that he entered the United States Post Office at 101 N. Main Street, in Joplin, Missouri."

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Hunter*, 179 S.W.3d 317, 318 (Mo.App. 2005), the record reveals that on July 1, 2003, Mr. Bray, the Postmaster of Joplin, Missouri, obtained an order of protection against Appellant, a former post office employee.[3] The order of protection prohibited Appellant from "enter[ing] or stay[ing] upon the premises . . . [l]ocated at . . . 101 N. Main Street, Joplin and 3115 S. Main, Joplin" and "enter[ing] the United States Post Office at 101 N. Main Street, Joplin, Mo. nor 3115 S. Main Street, Joplin, Mo." [4] Mr. Bray renewed the order of protection "in 2004 and 2005."

On March 10, 2004, at approximately 12:59 a.m., Pamela Holtsman ("Ms. Holtsman"), a post office employee, arrived "[i]n front of the Post Office [at 101 N. Main Street, Joplin] down at the very bottom of the hill . . ." and stopped her vehicle. She was scheduled to commence her night shift at the Post Office. Ms. Holtsman then noticed a man wearing a "gray hoodie sweatshirt," a "blue jean jacket," gloves and a "dark colored" mask approach the post office's employee parking lot. Ms. Holtsman recognized the man to be Appellant because she had worked with him for eight years. Ms. Holtsman testified that Appellant "backed up to the concrete wall [in the post office employee parking lot] . . . and he kind of squatted down [next to a white van parked there], and he took his hand towards the back tire and he kind of did this to it [six to ten times], and the van went down." She reported Appellant then "went to the front of the van and he did the same thing. Then he went around to the other side, and I can't say that I saw him do it, but as the van went down you kind of could tell that he was puncturing the tires." Appellant then walked across the street.

Ms. Holtsman called 911 on her cell phone and the police dispatcher asked her if the person she saw was Appellant to which Ms. Holtsman answered in the affirmative. Ms. Holtsman was told by the police dispatcher to follow Appellant and she did so but "kind of lost sight of him." The police arrived shortly thereafter. After Appellant was apprehended by police, Ms. Holtsman identified him as the man

---

**2.** Appellant does not challenge the sufficiency of the evidence to support his conviction for tampering with a motor vehicle, which is the felony upon which the armed criminal action charge is based.

**3.** In support of his request for an order of protection, Mr. Bray wrote:

[Appellant] was removed from the Postal [Service] in June of 2001. He has a history of violent and abusive behavior. He has been continually harassing myself [and] postal official[s] as noted. . . . He has an arrest record for domestic violence and I believe it is not coincidental that acts of vandalism . . . took place on or about the dates on which personnel actions and court decisions in his case were rendered. He continues to make libelous, defamatory submissions to numerous parties including my superiors and to the media. His appeal on his [employment] hearing was rendered on 6–17–03[and] was adverse to him.

**4.** The record reveals both of these addresses are United States Post Office addresses in the City of Joplin, Missouri.

she saw slashing the van's tires in the employee parking lot of the post office.

Officer Travis Walthall ("Officer Walthall") of the Joplin Police Department testified that he was dispatched to the post office on the night in question due to Ms. Holtsman's call "that there was some property damage being done on the lot." He reported Ms. Holtsman told the dispatcher "that she thought it was an ex-employee, [Appellant]." Officer Walthall testified that as he approached the post office he encountered Appellant's vehicle leaving the area "at a high rate" of speed with its lights off and he turned on his lights and sirens. Officer Walthall initiated a traffic stop of Appellant. Upon making contact with Appellant, Officer Walthall discovered the name on Appellant's driver's license matched the name he had been given by dispatch as the name of the suspect in the post office incident and the clothing description he had been given by dispatch matched that of Appellant. Officer Walthall placed Appellant under arrest and discovered "a six inch folding knife" in his pocket. Additionally, Officer Walthall found "a dark colored stocking cap" "with three holes" and "a pair of gloves" in Appellant's vehicle as well as a can of black spray paint. Officer Walthall then took Appellant back to the post office where Ms. Holtsman identified him as the man she saw slashing the tires on the white van. In his examination of the van, Officer Walthall discovered all four of the van's tires had been punctured and "the passenger side of the vehicle had also been spray painted with black paint."

Paul Light ("Mr. Light") testified that he is a "mail contractor" for the United States Postal Service and is the owner of the white van vandalized by Appellant. He stated that he received a call on March 10, 2004, that the tires on one of his vans had been slashed and there had been graffiti painted on it. He stated the approximate damage to the van was $300.00.

At trial, Appellant offered the alibi testimony of his girlfriend, Nora Madda ("Ms. Madda"). Ms. Madda testified that on the evening of March 10, 2004, Appellant arrived at her house at between 7:30 and 8:00 in the evening and stayed until after 1:00 a.m.

At the close of all the evidence, the jury found Appellant guilty of tampering with a motor vehicle in the first degree, violating a protective order, and armed criminal action, and was sentenced as previously set out. This appeal followed.

■ " 'We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case.' " *State v. Howard*, 973 S.W.2d 902, 906 (Mo.App.1998) (quoting *State v. Foster*, 930 S.W.2d 62, 63 (Mo.App. 1996)). "Our standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Wright* 998 S.W.2d 78, 81 (Mo. App.1999). The court must examine the elements of the crime and consider each in turn; reviewing the evidence in the light most favorable to the judgment, disregarding any contrary evidence; and granting the State all reasonable inferences from the evidence. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). We defer to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony. *State v. Nichols*, 20 S.W.3d 594, 597 (Mo.App.2000).

*APPEAL NO. 27712*

■ In his sole point of trial court error in appeal number 27712, Appellant maintains the trial court erred in denying his motion for judgment of acquittal as to the armed criminal action charge because

there was insufficient evidence to prove beyond a reasonable doubt that "the knife used at the time of the damage to the van's tires was ... a dangerous instrument or deadly weapon as required by [section] 571.015.1...." Appellant argues "under the circumstances of this particular case that there was never a showing [that he used the knife] with an intent [to cause] death or bodily harm." He maintains that the "mental state of knowingly or intentionally using the instrument to cause death or bodily harm is required to convert it from an innocent article to a dangerous instrument."

Section 571.015.1 states, in pertinent part, that "[e]xcept as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action...."[5] Section 556.061(9) defines a dangerous instrument as "any instrument, article or substance, which, *under the circumstances in which it is used*, is readily capable of causing death or other serious physical injury...." (Emphasis added.) " 'Serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body...." § 556.061(28).

There is no doubt that in the present matter Appellant used the knife at issue to commit the crime of tampering with a motor vehicle. The question for this Court to determine is whether "under the circumstances in which it [wa]s used" the knife was "readily capable of causing death or other serious physical injury ..." such that it was a dangerous instrument for

purposes of the armed criminal action statute. § 556.061(9); § 571.015.1.

■ The key consideration in determining whether an object is a dangerous instrument per section 556.061(9) is whether it can kill or seriously injure "under the circumstances in which it is used." *State v. Eoff*, 193 S.W.3d 366, 373 (Mo.App. 2006); *see also State v. Hyman*, 11 S.W.3d 838, 841 (Mo.App.2000) (quoting *State v. Jackson*, 865 S.W.2d 678, 680 (Mo.App. 1993)) (holding that " '[t]o determine whether an object is a dangerous instrument we must look to its use under the circumstances' "). "Unlike a deadly weapon, a dangerous instrument is not designed for use as a weapon and may have a normal function under ordinary circumstances." *State v. Williams*, 126 S.W.3d 377, 384 (Mo. banc 2004). "Missouri courts have repeatedly held that a seemingly innocuous item may constitute a dangerous instrument by considering the circumstances under which the object is used." *Id.* "In these cases, the standard for determining whether an ordinary object constituted a dangerous instrument turned on whether the defendant knowingly used the object in a manner in which it was readily capable of causing death or serious physical injury." *Id.*

This Court acknowledges that sections 575.015 and 556.061(9) do not contain a requirement that other persons be present in order for a defendant to be guilty of armed criminal action. With that being said, the plain reading of the statute sets out that in order for an instrument to be labeled as a "dangerous instrument" per section 556.061(9) the instrument must "*under the circumstances in which it is used*, [be] readily capable of causing death

---

**5.** The State contends the knife used in the present matter was a dangerous instrument

and not a deadly weapon.

or other serious physical injury ...," which is defined in section 556.061(28) as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body...." (Emphasis added.)

Here, Appellant does not dispute that he used the knife at issue to slash the tires on the van and that he is guilty of tampering with a motor vehicle. He takes issue with the fact that "under the circumstances in which it [wa]s used," section 556.061(9), the knife cannot be considered a dangerous instrument because there was no one present at the time he committed the underlying felony of tampering to whom the knife posed "a substantial risk of death or ... serious disfigurement or protracted loss or impairment of the function of any part of the body...." § 556.061(28). We agree.

The record reveals Appellant was alone in an empty parking lot in the middle of the night. There was no one else present against whom the knife could be "capable of causing death or other serious physical injury...."[6] § 556.061(9).

The present situation is particularly fact specific. Tampering with a motor vehicle is a property crime which can be committed without the presence or involvement of another person. As already related, the key consideration in determining whether an object is a dangerous instrument is whether it can kill or seriously injure "under the circumstances in which it is used," *Eoff*, 193 S.W.3d at 374. Given the particular facts at issue there was but a remote possibility that any other individual could have been injured by Appellant's use of the dangerous instrument. As such, there

was "[in]sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt," *Wright*, 998 S.W.2d at 81, of the crime of armed criminal action. The trial court erred in denying Appellant's motion for judgment of acquittal. Appellant's sole point in appeal number 27712 has merit.

## APPEAL NO. 27713

■ Turning now to Appellant's sole point of error in appeal number 27713. Appellant maintains the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to prove beyond a reasonable doubt that he violated the protective order "in that the State failed to establish that [Appellant] entered upon a premises where [Mr. Bray] resided or that he entered the United States Post Office at 101 N. Main Street, in Joplin, Missouri." Appellant argues "the State was required, as an essential element of its case, to establish ..." he violated the protective order by entering Mr. Bray's residence. We agree.

Here, Appellant was charged in the Third Amended Information with a "violation of [s]ection 455.085 ..." for violating an order of protection "which prohibited him from abusing, threatening to abuse, stalking or entering the premises at 101 Main, Joplin, Missouri," and "knowingly violat[ing] the terms and conditions of the order by entering the premises at 101 North Main, Joplin, Missouri."

At trial, the jury was instructed that in order to find Appellant guilty of violating section 455.085 it had to find that there was "an order prohibiting [Appellant] from staying at or entering [the] premises at

---

6. As best we discern, Ms. Holtsman witnessed the event from the safety of her vehicle some distance away from Appellant. There is no evidence that Appellant was aware of her presence until after she phoned 911 and attempted to follow Appellant away from the scene of the crime in her vehicle as instructed by the police.

101 North Main Street, Joplin, Missouri," and that Appellant "knowingly violated the terms and conditions of that order by entering the premises at 101 North Main Street, Joplin, Missouri."

Section 455.085.8 states that "[a] violation of the terms and conditions, with regard to abuse, stalking, child custody, communication initiated by the respondent or entrance upon the premises of the petitioner's *dwelling unit*, of a full order of protection shall be a class A misdemeanor...." (Emphasis added.)

Accordingly, in order to prove Appellant violated the protective order at issue the State was required to prove "[a] violation of the terms and conditions, with regard to abuse, stalking, child custody, communication initiated by the respondent or entrance upon the premises of the petitioner's dwelling unit, of a full order of protection...."[7] § 455.085.8.

 The State urges that the post office was "the business residence" of Mr. Bray and that it is inconsequential that the stated address "was not the dwelling place of [Mr. Bray], but the place of employment since this was where Appellant's harassing actions were directed." While this is a novel argument, we are bound by the elements of the crime stated in the statute and the statute's construction. "The goal of statutory construction is 'to ascertain the legislative intent from the language of the act, considering the words used in their plain and ordinary meaning, and to give effect to that intent whenever possible.'" *State v. Laplante*, 148 S.W.3d 347, 349 (Mo.App.2004) (quoting *Connor v. Monkem Co.*, 898 S.W.2d 89, 90 (Mo. banc 1995)). "[T]he rule of strict [statutory] construction requires courts to construe criminal statutes strictly against the [S]tate." *Id.*

As an aid in determining " 'a word's plain and ordinary meaning' " we oftentimes turn to the word's dictionary definition. *State v. Daniel*, 103 S.W.3d 822, 826 (Mo.App.2003). Black's Law Dictionary defines "dwell" as "to remain; to linger" and "to reside in a place permanently or for some period." *Black's Law Dictionary* 546 (8th ed.1999). Further, Black's Law Dictionary defines "dwelling house" as "[t]he house or other structure in which a person lives; a residence or abode." *Black's Law Dictionary* 546 (8th ed.1999).

Here, the State offered no proof that Appellant "ent[ered] upon the premises of [Mr. Bray's] dwelling unit." § 455.085.8. Mr. Bray testified he did not "reside" at either 101 N. Main Street or 3115 S. Main Street in Joplin, Missouri, and that both of those addresses were premises owned by the United States Postal Service as opposed to being premises upon which he dwelled or resided.[8] There was no evidence that Mr. Bray resided permanently at his place of employment or that the post office was the structure, abode, or residence in which Mr. Bray dwelled or resided. The only proof offered by the State was that Appellant entered the premises owned by the post office. While such an action by Appellant is technically a violation of the trial court's protective order entered against him, it is not a violation of section 455.085.8. We are "not called upon to decide whether [Appellant] was in contempt of court for having violated the

---

7. We note there was no allegation that Appellant abused, stalked, or communicated with Mr. Bray in relation to his violation of the order of protection. Additionally, this is obviously not a situation where the issue of child custody was a concern.

8. In his petition for order of protection Mr. Bray listed his place of residence as "P. O. Box 26, Joplin, Mo. 64802."

terms of the protective order[ ] by having [entered on the post office premises]. This was not a contempt action." *State v. Keith*, 839 S.W.2d 729, 732 (Mo.App.1992). "Even though [Appellant's] actions might have been in violation of the court's protective order[ ], they are not within the elements constituting a criminal offense under [section 455.085.8.]" *Id.*

The State failed to adduce sufficient evidence to make a submissible case as to the purported violation of section 455.085. *See Howard*, 973 S.W.2d at 906. The trial court erred in denying Appellant's motion for judgment of acquittal and in finding Appellant guilty of the crime of violating a full order of protection. Point granted.

The judgment and sentence of the trial court as to the tampering charge is affirmed. In all other respects the judgment and sentence of the trial court is reversed.

GARRISON, J. and BATES, C.J., concur.