JEFFREY W. BATES, J.
James Brittain (Defendant) was found guilty in a court-tried case of the class D felony of first-degree property damage and the unclassified felony of armed criminal action (ACA). See §§ 569.100, 571.015.[1] Defendant challenges only his ACA conviction. He contends the trial court erred in overruling Defendant's motion for judgment of acquittal on the ACA charge because the State presented insufficient evidence that he committed first-degree property damage by means of a "dangerous instrument." See § 556.061(9). He argues that the metal pipe he used to damage property was not a dangerous instrument because, "under the circumstances in which it was [used,]" it was not "readily capable of causing death or other serious physical injury." We disagree and affirm.
In a court-tried criminal case, the judge's findings have the force and effect of a jury verdict. Rule 27.01(b); State v. Crawford , 68 S.W.3d 406, 408 (Mo. banc 2002). Therefore, the standard used to review the sufficiency of the evidence in a court-tried and a jury-tried criminal case is the same. State v. Lauer , 955 S.W.2d 23, 24-25 (Mo. App. 1997). Appellate review is limited to determining whether there was sufficient evidence from which the fact-finder could have reasonably found the defendant guilty beyond a reasonable doubt. Crawford , 68 S.W.3d at 408. In reviewing the evidence, we accept as true all evidence and inferences favorable to the State; all contrary evidence and inferences are disregarded. Crawford , 68 S.W.3d at 407-08. So viewed, the following evidence was adduced at trial.
On November 1, 2015, Michael Hoth (Victim) drove his girlfriend's 2003 Chevrolet *927 truck (the Chevrolet) to the home of Betty Cooper (Cooper). Victim parked the Chevrolet and went inside. Defendant and a passenger, Shawn Sharp (Sharp), were driving in the area when they saw the Chevrolet, which they knew Victim drove. Defendant parked next to the Chevrolet, and he and Sharp jumped out of their vehicle.
Victim could see Defendant and Sharp through an open door and heard them call for him to come outside. When he did so, Defendant and Sharp started yelling at Victim, cursing and threatening him. According to Victim, Defendant "yelled my name and said he was going to F me up." About that same time, Defendant and Sharp each picked up a four-foot metal pipe out of the back of Defendant's truck and came after Victim. Victim said he was "scared for [his] life" and ran to the back of Cooper's house, where he continued to observe the two men from about 12 feet away. Defendant and Sharp then proceeded to beat the Chevrolet with their pipes. Victim testified that "[t]hey started beating my truck because they couldn't come after me." Sharp similarly testified that he was mad at Victim, "wanting to fight him and stuff" and "kind of took it out on his truck." Cooper heard "a lot of screaming and yelling and threatening to kill somebody" and described Defendant as "the one that was doing the most-he was the loudest." She called 9-1-1. When Defendant and Sharp heard that the police had been called, they quickly left the scene.
In the second amended information, Defendant was charged with first-degree property damage (Count 1) and ACA (Count 2). With respect to the ACA charge, the information alleged that Defendant committed the felony of first-degree property damage "by, with and through, the knowing use, assistance and aid of a club, a dangerous instrument." The court found Defendant guilty of both counts.[2] Defendant filed a post-trial motion for acquittal, challenging the sufficiency of the evidence to support either conviction. The court overruled the motion.
During the sentencing hearing, defense counsel asked the court to reconsider its finding of guilt on the ACA charge. Counsel argued that there had never been a single Missouri case in which a property offense was the predicate felony for an ACA conviction. The court was unpersuaded and imposed sentences on both the first-degree property damage and ACA convictions. This appeal followed.
Defendant contends the evidence was insufficient to support his ACA conviction. We begin our analysis by examining the text of § 571.015. It states that "any person who commits any felony under the laws of this state by, with or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of [ACA.]" Id . (emphasis added). The only exceptions to this broad "any felony" language are the few enumerated crimes listed in § 571.015.4, none of which are applicable here. Id .[3] ; see State v. Jones , 479 S.W.3d 100, 108 (Mo. banc 2016) (in addition to " 'use' ... the words 'assistance' and 'aid' broaden the reach of *928 the armed criminal action statute to any crime committed with the help of a weapon"); State v. Smith , 242 S.W.3d 735, 742 (Mo. App. 2007) ("[b]ecause virtually any felony can serve as the predicate offense, there are innumerable alternative methods by which ACA can be committed").
On appeal, Defendant concedes that: (1) the "any felony" language used in § 571.015 is broad enough to include first-degree property damage as a predicate felony for ACA; and (2) he committed that felony. Defendant argues, however, that the evidence was insufficient to support the finding that he used a "dangerous instrument" as defined by statute. A "dangerous instrument" means "any instrument, article or substance, which, under the circumstances in which it is used , is readily capable of causing death or other serious physical injury[.]" § 556.061(9) (emphasis added); see also State v. Williams , 126 S.W.3d 377, 384-85 (Mo. banc 2004) (§ 556.061(9) "does not require that the defendant have the subjective intent to use the object with an intent to cause death or serious physical injury"; the statute "requires only that the defendant knows he is using the instrument under circumstances that are 'readily capable of causing death or serious physical injury' "). The key consideration is whether the metal pipe in this case was readily capable of causing death or serious physical injury "under the circumstances in which it was used." State v. Rousselo , 386 S.W.3d 919, 924 (Mo. App. 2012) ; see also State v. Johnson , 182 S.W.3d 667, 672 (Mo. App. 2005).
Defendant argues that under the circumstances in which the metal pipe was used, it was not a dangerous instrument because: (1) Defendant used the pipe to damage only the Chevrolet; and (2) Victim was at least 12 feet away. Based on this premise, Defendant claims the evidence that Victim "was scared and felt threatened" and that Defendant "was yelling and cursing while hitting the [Chevrolet,]" did not establish beyond a reasonable doubt that Defendant used the pipe "under circumstances in which it was readily capable of causing death or other serious physical injury." To support this argument, Defendant relies upon State v. Baumann , 217 S.W.3d 914 (Mo. App. 2007).
In Baumann , a post office employee was sitting in her vehicle at 1:00 a.m. when she observed the defendant, a former employee who had been fired, enter the parking lot wearing gloves and a mask. Id . at 916. The witness saw the defendant squat down next to another employee's parked van and appear to puncture its tires with a knife. Id . The defendant was convicted of first-degree tampering with a motor vehicle and ACA. Id . at 915. This Court reversed the defendant's conviction of ACA because: "[t]he record reveals [the defendant] was alone in an empty parking lot in the middle of the night. There was no one else present against whom the knife could be 'capable of causing death or other serious physical injury....' " Id . at 919. The only person who observed the event was the witness, who did so from "the safety of her vehicle some distance away" and there was "no evidence that [the defendant] was aware of her presence until after she phoned 911[.]" Id . at 919 n.6. The reversal of the ACA conviction was based upon the very unusual circumstances of how the predicate felony was committed:
The present situation is particularly fact specific. Tampering with a motor vehicle is a property crime which can be committed without the presence or involvement *929 of another person. As already related, the key consideration in determining whether an object is a dangerous instrument is whether it can kill or seriously injure under the circumstances in which it is used[.] Given the particular facts at issue there was but a remote possibility that any other individual could have been injured by [the defendant's] use of the dangerous instrument. As such, there was insufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt ... of the crime of armed criminal action.
Id . at 919 (internal quotation marks, brackets and citations omitted). For the following reasons, Defendant's reliance on Baumann is misplaced.
Viewing the evidence in the light most favorable to the trial court's finding of guilt, Defendant used the metal pipe in a manner that was readily capable of causing death or other serious physical injury to Victim. § 556.061(9). Defendant and Sharp, acting together, stopped at Cooper's home when they saw the Chevrolet. They yelled at Victim to come outside. When he did so, Defendant and Sharp armed themselves with the metal pipes and "came after" Victim, overtly threatening to injure or even kill him. Defendant and Sharp got as close as 12 feet to Victim. As the testimony by Victim and Sharp established, the Chevrolet was beaten in a violent manner after those threatening statements were made and Victim retreated to the back of Cooper's home. It is a reasonable inference that Defendant would have used the pipe on Victim if he had remained. The photographic evidence of the harm done to the Chevrolet leaves no doubt that a human being struck with Defendant's metal pipe could have suffered serious physical injury or death. Under the circumstances in which the metal pipe was used, it was readily capable of causing serious physical injury or death to Victim. That made the metal pipe a dangerous instrument for the purposes of the ACA conviction. See § 556.061(9); § 571.015.
We find support for our decision in State v. Ransburg , 504 S.W.3d 721 (Mo. banc 2016). In Ransburg , our Supreme Court reviewed the defendant's convictions for second-degree assault and ACA against a man who had escaped injury by fleeing. Id . at 722. One issue was whether the evidence concerning the defendant's use of a long stick during the incident was sufficient to prove that the stick was a dangerous instrument, as defined in § 556.061.9. Id . at 723. The defendant's ex-girlfriend and her fiancé were inside the ex-girlfriend's home. After the defendant kicked in the door, he charged at the fiancé while holding the stick in both hands with clenched fists. Id . at 722. Following the fiancé's escape into another room, the defendant punched his ex-girlfriend before running out of the home with the stick. Id . The defendant argued that the State failed to present sufficient evidence that the defendant used the stick as a dangerous instrument "because he did not swing or jab the stick at the man." Id . at 723. Our Supreme Court rejected that argument because:
[T]he evidence established that [the defendant] Ransburg, after forcibly breaking into the trailer of his ex-girlfriend, charged at the man 'like a football player would to hit another attacker' while holding the stick with both hands across his body. After the man escaped, Ransburg attacked his ex-girlfriend. A reasonable inference drawn from these circumstances is that Ransburg's conscious *930 object was, if he reached the man, to cause physical injury to the man by using the stick under circumstances in which it was readily capable of causing serious physical injury.
Id . at 724 (emphasis added). The facts of the instant case are very similar to Ransburg , in that Defendant: (1) yelled that he was going to "F [Victim] up"; (2) armed himself with a metal pipe; (3) came after Victim and got within 12 feet of him; and (4) beat upon the Chevrolet immediately after Victim ran away. From these facts, the trial court could have reasonably inferred that, if Victim had stayed put or tried to prevent the damage to the Chevrolet, Defendant could have used the metal pipe on Victim in a manner readily capable of causing serious physical injury or even death. This evidence is sufficient to support Defendant's ACA conviction because it proves his use of a dangerous instrument during the incident. See Ransburg , 504 S.W.3d at 724. Thus, the trial court did not err in overruling Defendant's motion for acquittal and imposing sentence on his ACA conviction. Defendant's point is denied.
A review of the legal file shows that Defendant's last name was misspelled in the judgment as "Brittian." Therefore, we remand with directions to enter an amended judgment showing Defendant's last name as "Brittain." In all other respects, the judgment is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-CONCUR
DANIEL E. SCOTT, J.-CONCUR

All references to statutes are to RSMo Noncum. Supp. (2014), other than references to § 571.015, which are to RSMo (2000). All references to rules are to Missouri Court Rules (2017).

The trial court found that, once Defendant and Sharp picked up the metal pipes, Victim "wisely, went into a tactical retreat," after which Defendant and Sharp used their pipes to "beat the daylights out of his vehicle."

ACA cannot be based upon "the felonies defined in sections 564.590, 564.610, 564.620, 564.630, and 564.640." § 571.015.4; State v. Smith , 242 S.W.3d 735, 742 n.4 (Mo. App. 2007).