NOT DESIGNATED FOR PUBLICATION

No. 126,751

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM E. JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; MICHAEL P. JOYCE, judge. Oral argument held April 8, 2025. Opinion filed May 9, 2025. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: William E. Johnson decided at a grocery store parking lot to take Carol Rowe's car. As a result of his decisions, he was convicted of aggravated battery, aggravated kidnapping, and aggravated robbery. He now timely appeals his convictions and sentences, raising six claims of error: (1) The district court lacked jurisdiction over all three of his crimes of conviction; (2) there was insufficient evidence to support his conviction for aggravated kidnapping; (3) the district court improperly instructed the jury on the relevant principles of jurisdiction; (4) the district court erroneously instructed the jury on the elements of aggravated kidnapping; (5) the district court erred in failing to

1

instruct the jury on attempted aggravated robbery as a lesser included offense of aggravated robbery; and (6) the district court erred in determining his criminal history for purposes of sentencing. Upon review of the entire record, we find no error and affirm Johnson's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 2020, Rowe stopped for groceries on her way home from work. Rowe went to the Hy-Vee grocery store near 79th Street and State Line Road in Johnson County, Kansas. She had recently had hip replacement surgery, making it more difficult to get in and out of her car. She parked in the first handicap-accessible space in the row. There was no vehicle parked in the adjacent space at that time. When Rowe came out of the store, there was a vehicle parked in the adjacent spot very close to the driver's side of her car. Rowe loaded her groceries into the trunk of her car and went to get in the driver's door. At that time, a masked man—later identified as Johnson—approached her and asked if she had a lighter. Rowe responded she did not, and the man started to walk away. However, Johnson soon returned with a rock in his hand and demanded Rowe give him her car or he would hit her with the rock. Rowe told him she would not give him the car. Rowe slowly got into the driver's seat and then Johnson —without invitation—climbed in the back seat of Rowe's car, still in possession of the rock.

Johnson demanded Rowe drive him to 31st Street and Prospect Avenue in Kansas City, Missouri. Rowe feared for her safety but agreed to drive Johnson if he would not harm her or her car. However, Rowe was uncertain she had any choice in the matter. She backed out and began driving as Johnson told her where to go. They traveled north on State Line Road, then turned onto Gregory Boulevard. Johnson continued to tell Rowe where to go as they made a series of turns. Johnson continued to demand Rowe give him her car and at some point climbed to the front passenger seat. Johson threatened to beat Rowe with the rock, but Rowe told him they would crash. Eventually, Johnson ordered

2

Rowe to stop and put the car in park. Rowe complied, stopping near the intersection of 67th Street and Chestnut Avenue in Kansas City, Missouri. Johnson then struck Rowe in the knee with the rock and grabbed the keys from the ignition.

Johnson got out of the car and went around to the driver's door to get Rowe out of the car, but she held onto the lock to prevent him from doing so. Johnson then went back to the passenger side with Rowe screaming for help. A passerby hesitated, but Johnson told the passerby Rowe was "just being dramatic," so the passerby kept walking.

Rowe realized she was not going to receive any help, so she offered to drive to a nearby hospital, then let Johnson have the car. Johnson refused to take Rowe to the hospital and struck Rowe in the head with the rock multiple times. Rowe blacked out for some time but eventually recognized she was being pulled out of the car and put on the ground by Johnson. Rowe looked up and saw Johnson get in the car and drive away. Around that time, a young man stopped and asked Rowe if she needed help. The young man helped Rowe gather some of her things that had fallen out of the car but immediately left after Rowe said she was going to call the police.

The responding officer found Rowe on the side of the street lying on the ground. Rowe was bleeding from her head and face with significant swelling. She was taken to the hospital by ambulance where she was treated for the injuries to her head and face, a cut inside her mouth, and a bruised knee, all because Johnson struck her with the rock.

Kansas City, Missouri, police were dispatched to look for Rowe's car. An officer observed the car and, while following it, the car began accelerating, so the officer activated his lights and sirens. This turned into a police pursuit until Johnson crashed the car near 12th Street and Chestnut Avenue in Kansas City, Missouri. Johnson attempted to flee but was quickly apprehended. Rowe confirmed the car Johnson crashed was hers. Law enforcement found a mask in Rowe's car that Rowe identified as the one worn by

3

her attacker. Johnson's DNA was found on the mask. A black stocking cap recovered from the front seat of the car also had Johnson's DNA on it. Rowe's blood was found on the shoes and jeans Johnson was wearing at the time he was arrested.

A jury convicted Johnson of aggravated kidnapping, aggravated robbery, and aggravated battery. The district court later sentenced Johnson to a controlling sentence of 586 months' imprisonment. Additional facts are set forth as necessary.

ANALYSIS

*The District Court Had Jurisdiction over the Proceedings*

Johnson argues the district court lacked subject matter jurisdiction because the acts underlying his convictions occurred in Missouri, not Kansas, even though his plan started in Kansas. His argument is unpersuasive.

Whether jurisdiction exists is a question of law subject to unlimited review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022). To establish jurisdiction in Kansas, it must be shown by a preponderance of the evidence that a crime was committed wholly or partly within the State. K.S.A. 21-5106(a)(1) and (g). A person commits a crime partly in Kansas if "(1) an act which is a constituent and material element of the offense" occurs in Kansas, "(2) an act which is a substantial and integral part of an overall continuing criminal plan" occurs in Kansas, or "(3) the proximate result of such act occurs" in Kansas. K.S.A. 21-5106(b). We interpret the territorial jurisdiction of Kansas to prosecute a crime broadly if one or more of the material elements of the crime occurred wholly or partly in Kansas. See *State v. Merrill*, 64 Kan. App. 2d 322, 332-34, 551 P.3d 202 (2024).

4

The evidence reflects Johnson's actions were all part of ongoing and interconnected conduct, which originated when he formed the intent to deprive Rowe of her car in Johnson County, Kansas. As later discussed, Johnson's subsequent arguments regarding jury instruction error undercut his arguments on this point. Johnson argues the district court should have given an instruction on attempted aggravated robbery as a lesser included offense of aggravated robbery because the evidence showed he attempted to do so in the Hy-Vee parking lot. We agree there was evidence Johnson attempted to commit aggravated robbery. And to *attempt* to commit aggravated robbery, he had to have the "specific intent" to commit aggravated robbery. *State v. Mora*, 315 Kan. 537, 542, 509 P.3d 1201 (2022). We observe his subsequent actions underlying all three offenses were a substantial and integral part of his overall continuing criminal plan to obtain Rowe's car. See K.S.A. 21-5106(b)(2).

The district court properly concluded that, from the moment Johnson approached Rowe in the Hy-Vee parking lot, his goal was to get her car. Johnson disputes this, asserting his goal was to be transported to a specific location in Missouri. This argument ignores the facts that, while still in Kansas, Johnson threatened Rowe with the rock and demanded she give him her keys and then—without invitation—climbed into the back seat of her car when she refused. Only then did Rowe offer to drive Johnson if he did not hurt her. Johnson commandeered Rowe and her car in Kansas before giving her a location to drive to in Missouri. While still in Kansas, Johnson instructed Rowe where to drive as they left the Hy-Vee parking lot. Based on this evidence, the district court correctly concluded:  "Johnson's actions in Kansas either constituted material elements of an offense (aggravated kidnapping and aggravated robbery) or substantial and integral parts of an overall continuing criminal plan (all three counts)."

The State points out Johnson committed essential elements of kidnapping in the parking lot. As charged here, aggravated kidnapping is done by "taking or confining . . . any person . . . by force, threat or deception, with the intent to hold such person" to

5

"facilitate flight or the commission of any crime" or "inflict bodily injury or to terrorize the victim or another," and actually inflicting bodily harm on the victim. K.S.A. 21-5408(a)(2), (a)(3), and (b).

When Rowe refused to give Johnson her car, he climbed into the back seat as she was getting in the driver's seat. Johnson had no permission to get in the car and still had the rock in his hand. While in the car, Johnson instructed Rowe to drive him to another location. Rowe did not believe she had any choice but to drive Johnson where he asked. In doing so, Johnson took or confined Rowe; therefore, he committed an essential element of aggravated kidnapping in Kansas. The district court found Johnson's actions in Kansas were a "substantial and integral part of an overall continuing criminal plan"— taking Rowe's car. See K.S.A. 21-5106(b)(2). Accordingly, jurisdiction over the charge of aggravated kidnapping was proper in Johnson County.

Johnson's aggravated robbery of Rowe also began in the Hy-Vee parking lot. Aggravated robbery is "knowingly taking property from the person or presence of another by force or by threat of bodily harm" while "armed with a dangerous weapon" or by inflicting "bodily harm upon any person in the course of such robbery." K.S.A. 21-5420(a), (b)(1), and (b)(2). Here, Johnson demanded Rowe's car and threatened to hit her with a rock. Johnson displayed the rock while making his demand for the car. In doing so, he obtained control over Rowe and her car by threat of force while armed with a dangerous weapon. Because these are constituent and material elements of the offense of aggravated robbery, jurisdiction was proper in Johnson County. See K.S.A. 21-5106(b)(1). Further, Johnson did not relent when Rowe refused to give him the car. Instead, he climbed into the car without permission and eventually struck her with the rock and took her car. These actions were a substantial and integral part of Johnson's overall continuing criminal plan, originating in Kansas, to obtain Rowe's car. See K.S.A. 21-5106(b)(2).

6

Finally, jurisdiction over the aggravated battery charge was proper under K.S.A. 21-5106(b)(2) because it was also a substantial and integral part of an overall continuing criminal plan originating in Johnson County. From the outset, Johnson's intent was for Rowe to give him her car, and if she did not agree, he would hit her with the rock. As he was ordering her where to drive, Johnson climbed into the front seat of the car and later ordered Rowe to stop. When she stopped, Johnson struck her on the knee with the rock and grabbed the keys from the ignition. He then went around to the driver's door to forcibly remove Rowe from the car. When she prevented him from doing so, he returned to the front passenger seat and struck Rowe with the rock several times before removing her from the car. The same rock Johnson brandished while threatening to commit an aggravated battery in Johnson County was used to strike Rowe in her car in Missouri. All of these acts enabled Johnson to complete the aggravated robbery. The district court properly concluded it had jurisdiction over all three charges.

*Sufficient Evidence Supports Johnson's Conviction for Aggravated Kidnapping*

Johnson challenges the sufficiency of the evidence presented to convict him of aggravated kidnapping.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

"This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

7

Here, the State's complaint alleged Johnson "[took] or confine[d] . . . Rowe, by force, threat or deception, with the intent to hold such person to facilitate flight or the commission of any crime or to inflict bodily injury or to terrorize the victim or another, to-wit: . . . Rowe, and did inflict bodily harm upon . . . Rowe." The district court's jury instruction No. 14 set out the following elements the State was required to prove: (1) Johnson took or confined Rowe by threat or force, (2) Johnson did so with the intent to hold Rowe for the commission of any crime or to inflict bodily injury on or terrorize Rowe, and (3) bodily harm was inflicted on Rowe.

Johnson's claim focuses on the first and second elements. He first argues there was no evidence he took or confined Rowe by force or threat, asserting she got into her car on her own initiative and "chose to stay in the car to attempt to prevent [him] from taking it." This argument is essentially a request for us to reweigh the evidence—something we cannot do. *Aguirre*, 313 Kan. at 209. Viewed in a light most favorable to the State, the evidence reflected Johnson took or confined Rowe by force or threat because he got into her car without permission, still in possession of the rock he previously threatened to hit her with, then demanded she drive him to another location. Rowe's testimony reflected she did not believe she had a choice. This evidence was sufficient to show taking or confinement by force or threat.

Johnson further argues the jury instruction given by the State charged him with alternative means of aggravated kidnapping: (1) that he sought to facilitate the commission of another crime, or (2) that he did so with the intent to inflict bodily injury upon or terrorize Rowe. He asserts the State was required to prove both but failed to sufficiently prove either. Johnson's argument is undercut by our Supreme Court's recent decision in *State v. Reynolds*, 319 Kan. 1, 552 P.3d 1 (2024). There, our Supreme Court abandoned the super-sufficiency analysis previously required when a jury was instructed on alternative means of committing a crime. 319 Kan. at 17. Claims of alternative means errors are no longer subject to automatic reversal, absent sufficient evidence to prove

8

each of the alternative means, and are now subject to the harmless error analysis under *Reynolds*:

> "If a defendant claims a jury instruction contained an alternative means error, the reviewing court must consider whether the instruction was both legally and factually appropriate. The court will use unlimited review to determine whether the instruction was legally appropriate and will view the evidence in the light most favorable to the requesting party when deciding whether the instruction was factually appropriate. Upon finding error, the court will then determine whether that error was harmless, using the test and degree of certainty set forth in [*State v.*] *Plummer*, 295 Kan. 156, 283 P.3d 202 [(2012)], and [*State v.*] *Ward*, 292 Kan. 541, 256 P.3d 801 [(2011)]." *Reynolds*, 319 Kan. at 17.

Given the specific facts of this case under either alternative, the jury instruction was legally and factually appropriate. The instruction was legally appropriate because it accurately reflected the conduct prohibited under K.S.A. 21-5408(a) and (b). The instruction was factually appropriate because the evidence showed Johnson took or confined Rowe with the intent to facilitate the commission of another crime—aggravated robbery—as well as the intent to inflict bodily injury upon or terrorize Rowe. And, as previously discussed, Johnson's actions were part of an overall continuing criminal plan to take Rowe's car. See K.S.A. 21-5106(b)(2).

The instructions for each of the alternative means were legally and factually appropriate when viewed in the light most favorable to the requesting party—here, the State—thus, there was no error in the instruction, and we decline to consider whether the instruction was prejudicial.

9

Relying on *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), Johnson further argues there was no evidence that the taking or confinement to support aggravated kidnapping was distinct from the underlying offense facilitated thereby—aggravated robbery. Our Supreme Court has explained under the *Buggs* test:

> "[A]n appellate court will vacate the kidnapping conviction if (1) the confinement is 'slight, inconsequential and merely incidental to the other crime,' (2) the confinement is 'inherent in the nature of the other crime,' or (3) the confinement did not make commission of the other crime 'substantially easier' or 'substantially lessen[ ] the risk of detection.' 219 Kan. 203, Syl. ¶ 10." *State v. Butler*, 317 Kan. 605, 608, 533 P.3d 1022 (2023).

Johnson argues any taking or confinement was merely incidental to the aggravated robbery. He relies on *State v. Cabral*, 228 Kan. 741, 744-45, 619 P.2d 1163 (1980), wherein our Supreme Court found forcibly confining a rape victim in the automobile where the rape occurred was incidental to the rape as "confinement of the woman is a necessary part of the force required in the commission of the rape." Johnson asserts the force or threat required to commit aggravated robbery is similarly indistinguishable from the force or threat used to take or confine Rowe in committing aggravated kidnapping. His argument is unpersuasive.

The State correctly points out Johnson confined Rowe, who had difficulty getting in and out of her car, for an extended period of time. Under threat of harm, Johnson ordered Rowe to drive, and they travelled several miles before he completed the aggravated robbery by taking her car. Rowe's confinement was not slight or inconsequential, nor was the continued threat of force to effectuate the kidnapping necessarily incidental to the threat of force, and eventual use of force, to commit the robbery. That is, while Johnson initially threatened to hit Rowe with the rock in his original attempt to take her car in the Hy-Vee parking lot, this was a momentary occurrence. Similarly, when he struck her with the rock at the time he took the car, he did

10

so with the use of force to complete the aggravated robbery. However, the extended, ongoing threat of force used in the aggravated kidnapping was to get Rowe to another location where Johnson could complete the aggravated robbery. And while it was used to *facilitate* aggravated robbery, it was not "slight, inconsequential and merely incidental to" aggravated robbery. See *Buggs*, 219 Kan. at 216.

Additionally, the aggravated kidnapping made the commission of aggravated robbery "substantially easier" or "substantially lessen[ed] the risk of detection." See 219 Kan. at 216. The evidence reflected Rowe's car was parked near the entrance of the grocery store, and another vehicle was parked very close to Rowe's in the spot adjacent to her car's driver's side. Rowe had difficulty getting in and out of the car as previously discussed. It would have been much more difficult to force Rowe out of the car in the Hy-Vee parking lot while the store was open with customers coming and going. This all increased the risk of detection if Johnson had Rowe remain in the parking lot as he tried to take the car. Accordingly, Johnson's reliance on *Buggs* and its progeny is unpersuasive.

Johnson's argument about the alternative means of intent to inflict bodily injury upon or terrorize Rowe is likewise unpersuasive. Intent can be inferred from the circumstances. *State v. Scaife*, 286 Kan. 614, 617, 186 P.3d 755 (2008). Reasonable inferences from Rowe's testimony reflect that, from the outset, Johnson intended to injure or terrorize Rowe if she did not give Johnson her car. Why else did he have the rock? When Rowe refused and got in her car in an attempt to prevent Johnson from taking it, he climbed into her back seat and continued threatening to hit Rowe with the rock. Johnson later hit Rowe with the rock when she did not comply with his orders. This evidence is more than sufficient to demonstrate Johnson took or confined Rowe with the intent to injure or terrorize her.

11

*There Was No Reversible Jury Instruction Error*

Johnson raises three claims of jury instruction error. Although he addresses these as three separate issues, we will combine them and address them collectively as the same overarching standard of review and general legal principles apply to each claim:

- The district court improperly instructed the jury on jurisdictional principles applicable to his conduct on either side of the state line;
- The district court failed to instruct the jury on all the necessary elements of aggravated kidnapping; and
- The district court erred by failing to instruct the jury on attempted aggravated robbery as a lesser included offense of aggravated robbery.

"'When analyzing jury instruction issues, we follow a three-step process: "(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless."'" *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

At the second step, we consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. In determining whether an instruction was factually appropriate, we must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 254-55.

Whether a party has preserved a jury instruction issue affects our reversibility inquiry at the third step. If the challenging party preserved the issue below, we apply one of two harmless error tests. An instructional error affecting a constitutional right is reviewed under the federal constitutional harmless error standard, i.e., whether the State

can show beyond a reasonable doubt that the error did not contribute to the verdict. *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]), *cert. denied* 565 U.S. 1221 (2012). When no constitutional right is implicated, we will find the error harmless if there is no reasonable probability the error affected the trial's outcome in light of the entire record. *Holley*, 313 Kan. at 254, 256-57.

When a party fails to object to a jury instruction before the district court, we review the instruction to determine if it was clearly erroneous. K.S.A. 22-3414(3). For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and we must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. Johnson, as the party claiming clear error, has the burden to show both error and prejudice. See *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

*Jurisdictional Instruction*

Johnson argues jury instruction No. 13 was erroneous because part of the instruction was factually inappropriate. In relevant part, the district court instructed the jury:

> "A person commits a crime partly within the State of Kansas if an act which is a constituent and material element of the offense occurs within the State of Kansas, or an act which is a substantial and integral part of an overall continuing criminal plan occurs within the State of Kansas, or the [proximate] result of such act occurs within the State of Kansas."

13

Although Johnson claims he objected to this instruction, the State is correct that Johnson waived his initial objection. At the instructions conference, the district court proposed the instruction just as it was read to the jury. Johnson objected on the ground the last part of the instruction was not factually appropriate because the proximate results of his actions did not occur in Kansas. The district court responded, "[A]t least with respect to kidnapping, you have to say that the kidnapping arguably started in Kansas." Johnson responded, "Right." The district court explained:

> "So it would be appropriate to leave that in there for that count. I don't know how to take it out for [the other] two [counts] and leave it in for [aggravated kidnapping]. So your objection is noted for the record and it is denied. The instruction will stay as proposed."

The district court later came back to the same instruction, stating, "All right. So just to confirm Instruction 13?" Johnson responded, "Back to no objection." Johnson affirmatively withdrew his prior objection with his no objection statement to the district court when it circled back to jury instruction No. 13 during the instructions conference. Accordingly, we find there was no timely objection preserved, and we will review for clear error.

*Merits*

Johnson does not dispute the instruction was legally appropriate because it is consistent with the language of K.S.A. 21-5106(b). Instead, he now asserts part of the instruction—which states: "A person commits a crime partly within the State of Kansas if . . . the proximate result of such act occurs within the State of Kansas"—was factually inappropriate because there was no evidence any acts occurring in Missouri had a result

14

in Kansas. He is correct on this point; our Supreme Court has explained K.S.A. 21-5106(b)(3) requires "a direct connection or nexus between the defendant's act or acts outside Kansas and the result in Kansas." *State v. Rozell*, 315 Kan. 295, 301, 508 P.3d 358 (2022). Accordingly, the instruction was not factually appropriate.

Although the State is correct Johnson waived his earlier objection and we must review for clear error, we find the error would not be reversible even if the objection had been properly preserved. Upon examination of the record, we observe there is no reasonable probability the error affected the outcome of the trial in light of the entire record. See *Holley*, 313 Kan. at 257. As our Supreme Court noted in *Reynolds*: "[W]e can rely on the jury to apply the law to the only available evidence in reaching its verdict." 319 Kan. at 19. As previously discussed, the evidence reflected constituent and material elements of aggravated robbery and aggravated kidnapping occurred within the State of Kansas, and all three crimes of conviction resulted from acts that occurred within Kansas which were a substantial and integral part of an overall continuing criminal plan. See K.S.A. 21-5106(b). The State explained as much in its closing argument, telling the jury:

> "Well, clearly just the kidnapping occurred in Kansas, the lesser included. But when you look at everything and the substantial and overall continuing criminal plan that started in Kansas with the [planned] goal of getting the car where Mr. Johnson couldn't get the car from [Rowe] in Kansas, but he took her to Missouri where he beat her and took the car from her. There is still jurisdiction in Kansas, and that's the law. And that's what Jury Instruction Number 13 says."

The jury could not have been confused into thinking there was any argument, let alone any evidentiary basis, to conclude jurisdiction existed based on an act Johnson committed in Missouri having a result in Kansas. We find no reversible error in jury instruction No. 13.

15

*Aggravated Kidnapping*

Johnson argues the district court's instruction on aggravated kidnapping (jury instruction No. 14) did not accurately reflect the elements required under K.S.A. 21-5408(a) and (b). He acknowledges he did not object but asserts we should find clear error and reverse. However, he additionally argues the jury instruction violated his right to a jury trial under section 5 of the Kansas Constitution Bill of Rights, as section 5 provides greater protection than the United States Constitution and requires reversal of his conviction for failure to state an element of the offense when instructing the jury.

The complained of instruction provided:

"To establish this charge, each of the following claims must be proved. Number one, the defendant took or confined Carol Rowe by force or by threat. Number two, the defendant did so with the intent to hold Carol Rowe for the commission of any crime or to inflict a bodily injury on or to terrorize Carol Rowe. Number three, bodily harm was inflicted upon Carol Rowe. Number four, this act occurred on or about the second day of December 2020 in Johnson County, Kansas."

Johnson asserts this instruction was legally inappropriate because it provided he took or confined Rowe "for the commission of any crime," as opposed to the language of K.S.A. 21-5408(a)(2), which refers to taking or confinement done "to facilitate . . . the commission of any crime." In large part, this appears to be a semantic distinction without a meaningful difference.

"For" is defined as "a function word to indicate purpose[,] . . . an intended goal[,]" or "the object or recipient of a perception, desire, or activity." Merriam-Webster's Collegiate Dictionary 488 (11th ed. 2003). By instructing the jury it had to find Johnson took or confined Rowe "with the intent to hold [Rowe] for the commission of any crime," the district court effectively told the jury it had to find Johnson did so with the purpose,

16

intended goal, or desire to commit any crime. "Facilitate" is defined as: "To make the occurrence of (something) easier; to render less difficult. . . . To make the commission of (a crime) easier." Black's Law Dictionary 732 (12th ed. 2024). Logically, an action undertaken to facilitate a crime— i.e., to make the occurrence or commission of the crime easier—cannot occur without the purpose, intent, or desire to commit the crime being facilitated. Contrary to Johnson's argument, the district court did not misstate the applicable law simply because it failed to recite verbatim the language of K.S.A. 21-5408(a)(2).

Still, even assuming the instruction was legally erroneous, Johnson is incorrect in arguing such error requires reversal of his conviction. Johnson first argues the error is reversible under the Kansas Constitution because the district court failed to instruct the jury on an essential element of the offense. He relies on *Harrell v. State*, 134 So.3d 266, 275 (Miss. 2014), wherein the Mississippi Supreme Court interpreted and applied language in section 31 of the Mississippi Constitution, which is nearly identical to section 5 of the Kansas Constitution Bill of Rights. *Harrell* is distinguishable. Harrell was charged with capital murder. The jury instruction in *Harrell* provided the jury had to find the killing was committed during the commission of another crime and specified that crime as robbery. However, the jury instruction did not provide the elements of robbery, nor was a separate instruction given to specify those elements.

Despite Johnson's insistence that "[this] case fits squarely within *Harrell*," he fails to acknowledge this distinction. Moreover, he repeatedly insists the district court below did not instruct the jury on all the elements of aggravated kidnapping. This argument is factually incorrect. Here, the district court instructed the jury on all the elements of aggravated kidnapping, albeit stating "for" rather than "to facilitate" when explaining the second element. Johnson fails to meaningfully explain how the district court accurately instructing the jury on every element of aggravated kidnapping—with the exception of a logically indistinguishable variation in two words in the second element—constitutes a

17

failure to instruct the jury on all the elements of the crime. We decline his request to reverse his conviction based on a minor difference between the wording of the jury instruction and the wording of the statute.

Instead, to the extent there was any error, we review for clear error. And, under the clear error standard, Johnson cannot meet his burden to firmly convince us the jury would have reached a different result had the district court used "to facilitate" instead of "for" in the second element of the aggravated kidnapping instruction. See *Crosby*, 312 Kan. at 639. As previously explained, the evidence strongly reflects Johnson committed aggravated kidnapping to facilitate aggravated robbery. Moreover, the State twice asserted in closing arguments that Johnson committed aggravated kidnapping to facilitate aggravated robbery. Even if the district court had added "to facilitate" to the instruction, it would not have made a difference in the verdict.

*Attempted Aggravated Robbery*

In his final claim of jury instruction error, Johnson asserts the district court erred in failing to instruct the jury on attempted aggravated robbery as a lesser included offense of aggravated robbery. He acknowledges he did not request the instruction; therefore, we review for clear error.

Johnson is correct the instruction would have been legally appropriate because an attempt to commit the charged crime is a lesser included offense of the charged crime. See K.S.A. 21-5109(b)(3). Johnson is also correct the instruction would have been factually appropriate because he demanded Rowe give him the car in the Hy-Vee parking lot, threatening to hit her with a rock if she refused. However, he was unsuccessful in obtaining her car; therefore, the evidence establishes he attempted, but failed, to complete aggravated robbery at that time.

18

Johnson is incorrect, however, that failing to give the instruction was clearly erroneous. Rowe testified Johnson was the person who threatened her with the rock, got into her car, ordered her to drive to Missouri, told her to stop the car, hit her with the rock multiple times after she stopped, took her keys, pulled her out of the car, and drove away. Johnson's mask and hat were found in Rowe's car, and Rowe's blood was on Johnson's clothing. Johnson was apprehended shortly after he crashed Rowe's car and attempted to flee. The evidence overwhelmingly demonstrates Johnson completed the charged offense. Johnson has failed to firmly convince us the jury would have reached a different verdict had an instruction on attempted aggravated robbery been given.

*Johnson's Criminal History Was Properly Calculated*

Finally, Johnson argues his criminal history was improperly calculated at sentencing, asserting the district court erroneously scored a Missouri conviction for armed criminal action as a person felony. He is incorrect. Whether a sentencing court properly determined an offender's criminal history in order to impose the sentence turns on interpretation of the Revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq. Statutory interpretation is a question of law subject to unlimited review. *State v. Moore*, 309 Kan. 825, 828, 441 P.3d 22 (2019).

Under the KSGA: "Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history." K.S.A. 21-6811(e)(1). "If a crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas." K.S.A. 21-6811(e)(2)(A). The out-of-state offense must be designated as a person or nonperson offense. K.S.A. 21-6811(e)(3). In relevant part, K.S.A. 21-6811(e)(3)(B) provides:

19

"(i) An out-of-state conviction or adjudication for the commission of a felony offense . . . shall be classified as a person felony if one or more of the following circumstances is present as defined by the convicting jurisdiction in the elements of the out-of-state offense:

. . . .

"(d) the presence of a person, other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance;

. . . .

"(g) being armed with, using, displaying or brandishing a firearm or other weapon, excluding crimes of mere unlawful possession;

. . . .

"(ii) An out-of-state conviction or adjudication for the commission of a felony offense . . . shall be classified as a person felony if the elements of the out-of-state felony offense that resulted in the conviction or adjudication necessarily prove that a person was present during the commission of the offense. For purposes of this clause, the person present must be someone other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance. The presence of a person includes physical presence and presence by electronic or telephonic communication."

The Missouri statute under which Johnson was convicted, Mo. Rev. Stat. § 571.015 (2020), provides, in relevant part: "Any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the offense of armed criminal action." Mo. Rev. Stat. § 571.015.1.

The State argues Johnson's Missouri conviction is a person felony under K.S.A. 21-6811(e)(3)(B)(i)(d) (presence of another person) and (e)(3)(B)(i)(g) (armed with, using, displaying, or brandishing a deadly weapon). Johnson asserts neither apply.

Johnson is partially correct insofar as the elements of armed criminal action do not require the presence of another person. The State contends Missouri appellate precedent suggests armed criminal action cannot be committed without another person being present, relying on *State v. Baumann*, 217 S.W.3d 914, 918-19 (Mo. Ct. App. 2007). However, *Baumann* acknowledged there was no explicit requirement in Mo. Rev. Stat. § 571.015 that another person be present during the commission of the crime. 217 S.W.3d at 919. K.S.A. 21-6811(e)(3)(B)(i) requires that "the . . . circumstances [enumerated therein are] present *as defined by the convicting jurisdiction in the elements of the out-of-state offense*." (Emphasis added.) Accordingly, it is improper to rely on what is, at best, an unwritten, implied element of the offense. Thus, Johnson's conviction cannot be considered a person felony under K.S.A. 21-6811(e)(3)(B)(i)(d).

The State is correct, however, that Johnson's Missouri conviction is a person felony under K.S.A. 21-6811(e)(3)(B)(i)(g). Mo. Rev. Stat. § 571.015 refers to both a narrower type of conduct and class of weapons than K.S.A. 21-6811(e)(3)(B)(i)(g). Specifically, Mo. Rev. Stat. § 571.015.1 refers to felonies committed "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." A "dangerous instrument" is statutorily defined in Missouri as " any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Mo. Rev. Stat. § 556.061(20) (2020). That is, Missouri's statutes that invoke the additional charge of armed criminal action are limited to felonies committed with deadly weapons or weapons readily capable of causing death or serious physical injury based on how they are used. In contrast, K.S.A. 21-6811(e)(3)(B)(i)(g) applies to "*any* firearm *or other weapon*." (Emphases added.) Under K.S.A. 21-6811(e)(3)(B)(i)(g), there is no requirement such a weapon be either deadly or used in a way capable of causing death or serious bodily injury. Accordingly, Mo. Rev. Stat. § 571.015 refers to a narrower class of weapons.

21

Mo. Rev. Stat. § 571.015.1 also prohibits a narrower range of conduct insofar as it requires the felony be committed "*by, with, or through the use, assistance, or aid of* a dangerous instrument or deadly weapon." (Emphasis added.) Missouri appellate courts have held the weapon must actually have been used, or have assisted, or aided in the commission of the crime; merely being armed with a weapon is not enough. See, e.g., *State v. Jones*, 479 S.W.3d 100, 108 (Mo. 2016); *State v. Reynolds*, 819 S.W.2d 322, 328-29 (Mo. 1991) ("[T]he *use* of a dangerous instrument or deadly weapon is an element of the crime. It means also that the intention to use, without actual use, is not enough to convict under the statute. [Citation omitted.]"). In contrast, K.S.A. 21-6811(e)(3)(B)(i)(g) refers to crimes in which the offender was "*armed with*, using, displaying or brandishing a firearm or other weapon." (Emphasis added.) Simply put, under the Missouri statute, being armed with a weapon is not enough; however, someone logically cannot commit a crime "by, with, or through the use, assistance, or aid of" a weapon without being *armed with* that weapon. See Mo. Rev. Stat. § 571.015.1. And, in Kansas, being armed with a weapon is enough. Compare K.S.A. 21-6811(e)(3)(B)(i)(g) with Mo. Rev. Stat. § 571.015. Accordingly, the elements of Mo. Rev. Stat. § 571.015 necessarily establish the crime was committed under the circumstances described in K.S.A. 21-6811(e)(3)(B)(i)(g). The district court properly scored Johnson's Missouri conviction for armed criminal action as a person felony.

CONCLUSION

Kansas had territorial jurisdiction over all of the crimes Johnson was convicted of because Johnson demanded Rowe's car, threatened her, got into the car without permission while in Kansas, and Johnson's subsequent actions on either side of the state line naturally flowed from that decision as part of a continuing plan to take Rowe's car. Sufficient evidence supports Johnson's conviction for aggravated kidnapping because the evidence reflects he took or confined Rowe in her car and did so either to facilitate the commission of aggravated robbery or to injure or terrorize Rowe. Johnson's claims of

22

jury instruction error are not persuasive, and he has failed to show the jury instructions as given rise to the level of clear error. Finally, we observe no improper scoring of Johnson's criminal history.

Affirmed.